ARROTT v. STANDARD SANITARY MFG. CO.

STANDARD SANITARY MFG. CO. v. ARROTT.

(Circuit Court, W. D. Pennsylvania. July 1, 1904.)

Nos. 16, 21.

1. PATENTS—PRIOR INVENTION—SUFFICIENCY OF EVIDENCE.

Oral testimony of prior invention and use, not only unsupported by any writing or exhibits, but also contradicted upon the question of priority of date, and which, at best, shows only an unsuccessful and abandoned experiment, is insufficient to defeat a patent.

2. SAME—PRIORITY OF INVENTION.

The Arrott patent, No. 633,941, for a dredger for pulverulent material, *held* not to have been anticipated by a device alleged to have been previously invented and put into use by another.

3. SAME—EQUITABLE ASSIGNMENT.

Evidence considered, and *held* not to sustain the claim of a defendant to the equitable ownership of a patent as against the patentee, either on the ground of contract or estoppel.

In Equity. Suit for infringement of letters patent No. 633,941, for a dredger for pulverulent material, granted to James W. Arrott, Jr., September 26, 1899, and cross-suit for specific enforcement of an alleged contract for the assignment of such patent to defendant. On final hearing.

In No. 16:

Christy & Christy, for complainant.

Lyon, McKee & Mitchell and Connolly Bros., for respondent.

In No. 21:

Connolly Bros. and Lyon, McKee & Mitchell, for complainant.

Christy & Christy, for respondent.

ACHESON, Circuit Judge. There are before the court for decision cross-suits in equity which have been heard together upon the pleadings and proofs. The original suit was brought by James W. Arrott, Jr., against the Standard Sanitary Manufacturing Company, for the infringement of his letters patent No. 633,941, for an improvement in dredgers for pulverulent material, granted to him on September 26 1899. The invention has relation to the sifting and distributing of powdered enameling material on the heated surface of bath tubs and other vessels, accomplished by a pneumatic agitator attached to the dredger, and adapted to vibrate the sieve. The answer to the bill in the first case set up two defenses, namely, first, the prior invention and use of this improvement by Oscar Marschuetz at Louisville, Ky.; second, the ownership by the defendant corporation of the patented invention, and its equitable title to the patent acquired by the defendant through and from the patentee, Arrott. Subsequently the Standard Sanitary Manufacturing Company filed a bill against James W. Arrott, Jr., setting up its alleged equitable title to the patent, and praying specific performance of an alleged contract with Arrott for the conveyance by him

¶ 1. See Patents, vol. 38, Cent. Dig. §§ 71, 73, 78.

to the defendant company of the patent. The patentability of the improvement is not denied, and the use by the Standard Sanitary Manufacturing Company of the patented dredger is admitted. We have then before us, and will consider in the order named, the two disputed questions involved in this litigation, to wit, the question of priority of the invention, and the question of the said company's alleged equitable title to the invention and patent.

1. At the time of the invention of the patented improvement, James W. Arrott, Jr., was superintendent of the enameling department of the old Standard Manufacturing Company, in Allegheny City, Pa. The evidence of Reed and Hunter, witnesses for the company, the Exhibit "bill for the First Arrott Hammer," and the testimony of Arrott himself, clearly show that Arrott's original conception dates back at least to February 14, 1898, and that from that date until June 30, 1898, when his device had been reduced to complete and operative form, he was diligently engaged in perfecting it. Marschuetz, who is alleged to have made and used a dredger similar to Arrott's, was superintendent of the Ahrens & Ott Company, of Louisville, Ky.—one of the concerns which afterwards was absorbed by the Standard Sanitary Manufacturing Company, a combination of a number of concerns formerly engaged in the manufacture of bath tubs and other sanitary articles and appliances. It is claimed by the company that Marschuetz made the invention about October, 1897, and used it at the plant of the Ahrens & Ott Company at Louisville for a very short period. Marschuetz himself, testifying for the company, states that, after it was used off and on for about three months, it was put aside and never again used. This dredger was not produced. It is said to have been lost in a fire which occurred in August, 1901. The alleged anticipating dates of the making and use of this Marschuetz dredger rest altogether upon the bare recollection of the witnesses for the Standard Sanitary Manufacturing Company, who testified in the fall of 1902. Not an anticipating date named by any of them is fixed by any exhibits, book entry, letter, or written memorandum whatever. These witnesses, who were mostly workmen at the Ahrens & Ott Company's establishment, do not agree among themselves. Their testimony is vague and unsatisfactory. I have no hesitation in saying that these witnesses leave the matter of the alleged anticipation by Marschuetz in such doubt that this defense would fail even if there was no opposing evidence on the subject. As the Supreme Court of the United States declared in Deering v. Winona Harvester Works, 155 U. S. 286, 300, 15 Sup. Ct. 118, 123, 39 L. Ed. 153: "Oral testimony, unsupported by patents or exhibits, tending to show prior use of a device regularly patented, is, in the nature of the case, open to grave suspicion." Here, however, the witnesses who testify to the alleged prior device and use by Marschuetz are met by a number of opposing witnesses, whose testimony convincingly shows that the Marschuetz device was not made or used until October 11, 1898. In my judgment, upon the question of priority of invention, the decided preponderance of the evidence is with Arrott. Moreover, under the company's own proofs, whatever Marschuetz essayed to do ended in failure. His device belongs to the category of abandoned experiments.

In Parham v. Machine Company, 4 Fish. P. C. 468, 482, Fed. Cas. No. 10,713, Judge McKennan (speaking also for Judge Strong) said:

"The evidence must establish clearly the priority of a completed and useful machine over the complainant's, or it is unavailable. To doubt upon this point is to resolve it in the negative."

In the more recent case of the Barbed-Wire Patent, 143 U. S. 275, 284, 12 Sup. Ct. 443, 447, 36 L. Ed. 154, the Supreme Court said:

"We have now to deal with certain unpatented devices, claimed to be complete anticipation of this patent, the existence and use of which are proven only by oral testimony. In view of the unsatisfactory character of such testimony, arising from the forgetfulness of witnesses, their liability to mistakes, the proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury, courts have not only imposed upon defendants the burden of proving such devices, but have required that the proof shall be clear, satisfactory, and beyond a reasonable doubt. Witnesses whose memories are prodded by the eagerness of interested parties to elicit testimony favorable to themselves are usually not to be depended upon for accurate information."

Upon the proofs and under the authorities, I hold that the defense to the original bill based upon the alleged prior invention and use of this improvement by Marschuetz must be overruled.

2. In respect to the alleged equitable title of the Standard Sanitary Manufacturing Company to the said patent, the averments of that company contained in its answer to the original bill and in its cross-bill against James W. Arrott, Jr., are, in substance, these, namely: That Arrott was a stockholder and director of the Old Standard Manufacturing Company, and that while thus interested in that company, and employed as its superintendent at its Allegheny City factory, and, under his contract, was to use his best endeavors to advance the interests thereof, and improve and perfect appliances to be used in its business, the improvement constituting the subject-matter of letters patent No. 633,941 was made and reduced to practice, and afterwards used in the business of said company, and the expenses incurred in procuring the patent were paid by that company; that said patent was taken and held by James W. Arrott, Jr., in trust for said company, and was used by the said company until the beginning of the year 1900 with the consent of said Arrott, it being the equitable owner of the improvement and patent; that on December 30, 1899, certain property of the Standard Manufacturing Company, including its plant in Allegheny City, and all its patents, whether held in its own name or in the name of others, were sold to the Standard Sanitary Manufacturing Company; that on the 26th of January, 1900, James W. Arrott, Jr., entered into a contract with the Standard Sanitary Manufacturing Company, by which he was employed as general superintendent of the factory in Allegheny City at an increase in salary, and by which he confirmed to the Standard Sanitary Manufacturing Company the right to patent No. 633,941, and he thereby agreed to assign to that company the said letters patent; that Arrott continued from the date of this contract, January 26, 1900, until about May 19, 1901, as general superintendent of the Allegheny City factory, from which position he resigned on the date last mentioned; and that the right of the Standard Sanitary Manufacturing Company to said letters patent and the use of the improvement was

never denied by James W. Arrott, Jr., until after his resignation of said position.

In his answer to the cross-bill of the Standard Sanitary Manufacturing Company, James W. Arrott, Jr., denies that, under his contract with the old Standard Manufacturing Company, he was under any obligations to make inventions for that company, or to transfer to it, or hold for its use and benefit, any letters patent he might obtain, and denies that that company ever became or was the owner, in law or equity, of letters patent No. 633,941. He avers the fact to be that the use of said improvement was originally commenced by the Standard Manufacturing Company, with his knowledge and consent, in the expectation and contemplation of a satisfactory agreement between that company and himself with relation thereto, and that thereafter, to wit, on October 23, 1899, that company, through its board of directors, expressly recognized his title to said improvement and letters patent, and it was then and there agreed between himself and the company that the company should pay to him for the privilege of using the improvement at its factory a royalty or compensation which should be satisfactory to him, and that thereafter that company used the improvement under and subject to that agreement. He admits that on January 26, 1900, he entered into a contract with the Standard Sanitary Manufacturing Company under which he was employed as general superintendent at the Allegheny City factory, but not at an increased salary, but at the same salary he had formerly received from the Standard Manufacturing Company, and that he continued in the employ of the Standard Sanitary Manufacturing Company under that contract until about May 19, 1901, when he resigned his position and left the company's employ. He denies that by the contract of employment of January 26, 1900, he confirmed to the Standard Sanitary Manufacturing Company the right to patent No. 633,941, and denies that he thereby agreed to assign said letters patent to said company. He avers that at the time he entered the employ of the Standard Sanitary Manufacturing Company, and thereafter until he left its employ, he was ready and willing to grant to that company a license under his said letters patent to use the improvement, upon the payment to him of a satisfactory royalty or compensation therefor, and that he so advised the managing officers of that company. He denies that he ever at any time consented to the use by that company of the said improvement otherwise than under the understanding that he should be duly compensated therefor. He further denies the averment in the bill of complaint that he did not prior to his resignation, on May 19, 1901, deny any alleged right of the Standard Sanitary Manufacturing Company to the said letters patent, or to the use of the improvement, and avers the fact to be that during his term of employment he gave to that company notice, through one or more of its proper officers, of the said letters patent, and his claims thereunder, and denied the right of the compnay to use the improvement without making due compensation to him; and he expressly denies that the Standard Sanitary Manufacturing Company, by the contract of employment of January 26, 1900, or otherwise, acquired any equitable title or interest in or to the said letters patent. The answer of James W. Arrott, Jr., is responsive to and traverses all

the allegations of the cross-bill upon which the right of the Standard Sanitary Manufacturing Company to equitable relief depends.

The proofs conclusively show that James W. Arrott, Jr., did not hold the letters patent No. 633,941 in trust for the Standard Manufacturing Company, and that that company had no right to use the patented improvement, except upon the basis of payment by the company to Arrott of a royalty satisfactory to him. The minute book of the company shows the following recited action in relation to said patent at a full meeting of the board of directors held on October 23, 1899:

"The matter of recognition of enameling appliances invented by James W. Arrott, Jr., and appliances for molding bath tubs invented by J. C. Reed was discussed, and it was agreed that such recognition be made on a royalty basis satisfactory to the said James W. Arrott, Jr., and J. C. Reed."

Thus the matter stood between Arrott and the Standard Manufacturing Company when the latter sold and transferred its property, including its patents, to the Standard Sanitary Manufacturing Company. The only right which passed from the Standard Manufacturing Company to the Standard Sanitary Manufacturing Company, as respects patent No. 633,941, was the right defined in the above-recited minute of October 23, 1899, namely, the right to use the invention on "a royalty basis satisfactory to the said J. W. Arrott, Jr." The Standard Sanitary Manufacturing Company, however, never sought to exercise such right, but repudiated an arrangement with Arrott on a royalty basis, and set up a title hostile to him. No question of license to use the invention is involved in this case. The company, in its answer to the original bill, and also in its cross-bill, puts its case upon its alleged equitable ownership of the patent. That is the issue, under the pleadings and proofs.

Now, as we have already seen, the Standard Manufacturing Company had no equitable ownership or title in or to the patent, and conveyed none to the Standard Sanitary Manufacturing Company. It remains, then, to inquire whether the company got an equitable title to the patent, or any interest therein, by virtue of a contract between it and Arrott, as alleged by the company in its answer and its bill.

The evidence shows that the negotiations which resulted in the consolidation of the Standard Manufacturing Company and other concerns into the new company, the Standard Sanitary Manufacturing Company, were conducted on the part of the Standard Maufacturing Company by James W. Arrott, the elder (the father of James W. Arrott, Jr.), and Francis J. Torrance. They held the bulk of the stock of that company. The interest of James W. Arrott, Jr., in the Company was only one-eightieth part of the capital stock. I find from the proofs that James W. Arrott, Jr., took no active part in the negotiations for the combination, and that he made no representations whatever to any of the persons conducting the negotiations for other concerns in respect to the ownership of the patent in controversy. The utmost that can be said is that he did not inform the gentlemen who were inspecting the Allegheny City plant that he was the owner of the patent. But he had no occasion to speak on that subject. He was not asked anything about it, and I cannot see that he was under any obligation to give that information. He had a right to suppose that the

gentlemen representing the other concerns who were negotiating with Mr. Arrott, Sr., and with Mr. Torrance, had knowledge that the use by the old company of the patented dredger was under the agreement with the old company spread out on the minute book. To hold that his mere silence under the circumstances operated as an estoppel against him, would be a cruel conclusion. Moreover, no matter of equitable estoppel has been set up by the Standard Sanitary Manufacturing Company in its answer or in its cross-bill. Under its averments in the pleadings, if it has any equitable title to or interest in the patent or the patented improvement, it is by express contract between the company and James W. Arrott, Jr.

In this connection it is proper to refer to a letter dated January 17, 1900, written by James W. Arrott, Jr., as superintendent of the new company, to Mr. E. L. Dawes, who was a member of the new company. Immediately after the new company commenced business, in January, 1900, Arrott was directed to send one of the patented dredgers to the Dawes-Myler plant, at New Brighton, Pa., that being one of the constituent concerns constituting the new company. Thus it was that Arrott came to write the letter. It contains the following clause:

"Yours of the 12th received, and am pleased to know that the dredger is satisfactory. I wish to state to you simply as a matter of record that the patent on the dredger belongs to me and that the Standard Manufacturing Company has given me credit for the invention and made satisfactory arrangement for its use here. I am not, of course, worrying about the action of the new company in regard to such matters, but do not wish the adoption of the dredger in your works to mean that I acknowledge the right of the Standard Sanitary Manufacturing Company to use the same without any consideration."

According to the testimony on behalf of the new company, the alleged contract between it and James W. Arrott, Jr., by which the company acquired the equitable title to patent No. 633,941, was entered into at a meeting of the executive committee of the company held on January 26, 1900. The witnesses on the part of the company to show the alleged contract are Messrs. Myler, Cribben, Dawes, and Ahrens. These gentlemen are all stockholders in the new company. It seems very clear from what these witnesses say that the employment of Arrott and its terms were agreed on before any question was raised in respect to his patent. His salary was to be the same as that he had previously received from the old company, with an undefined further contingent based on the future result of the business. Mr. Dawes states:

"After the salary was fixed up, he asked the question, what was going to be done with reference to his patent dredger? Different members of the committee stated that, as far as they were concerned, he had no patent dredger; that the dredger was a part and parcel of the plant, and had been turned over with the plant by the stockholders of the Standard Manufacturing Company."

And Mr. Dawes proceeds to state that a heated conversation followed. It can hardly be said that any of the witnesses on behalf of the company testify directly to the specific terms of an agreement between the company and Arrott in respect to the patent, but their testimony indicated a belief on their part that Arrott had consented to the claim of the company that it had acquired the patent by purchase from the old company.

Mr. Arrott himself testifies positively to the contrary, and states that in that interview, from first to last, he denied the claim set up by the new company, and refused to recognize it. It appears from the company's own testimony that a minute of the proceedings of that meeting was made at the time by Mr. Myler, the secretary of the company, and was entered upon the minute book. That minute is an exhibit in this case offered by each party. So far as it is important to this controversy, I quote the minute at length, to wit:

"\* \* \* \* \* \* \* \* \* \*

"Mr. Charles F. Arrott and James W. Arrott, Jr., then came before the committee, and after quite a discussion as to plans, management, etc., of the Standard Manufacturing Company, Mr. C. F. Arrott signified his entire satisfaction, and the committee agreed to enter into a contract with him at an annual salary of $3,600 as manager of the Allegheny Works, and a further contingent based on the result of the business at the said Standard Mfg. Co.'s Works.

"It was then agreed to enter into a contract with Mr. James W. Arrott, Jr., as General Superintendent of the Allegheny Works, known as the Standard Mfg. Co. Works, on a salary of $3,600 per year with the same understanding as to contingent with Mr. C. F. Arrott.

"Further it was the general understanding of the members of the Executive Committee that the Standard Sanitary Mfg. Co., own and control, and that the same should be transferred to this Company, the patents obtained by James W. Arrott, Jr., and those in process or already applied for with reference to the dredging of enamel. The company's control of these patents it is understood is in the United States only, and Mr. James W. Arrott, Jr., was advised to this effect.

\* \* \* \* \* \* \* \* \* \*

"W. A. Myler, Secretary."

This minute, in my judgment, is decisive against the allegation of the company that Mr. Arrott entered into the agreement upon which the company relies. It contains in clear terms a memorandum of what was agreed on between Arrott and the company in respect to his employment. This is the only agreement with him recorded. If there had been any such agreement made in respect to his patent as the company alleges, undoubtedly it would have been stated in the minute, which Mr. Myler himself testifies contains a correct record of the facts as they occurred at that meeting. It will be perceived that the minute merely sets forth what was the "general understanding of the members of the Executive Committee" in respect to the patent, and that Mr. Arrott was so "advised."

The allegation made by the company in its cross-bill that its right to the letters patent and to the use of the improvement was never denied by Arrott until after his resignation of his position as an employé of the company is positively disproved. It appears that his father, James W. Arrott, Sr., who died pending these suits, and whose testimony therefore is not before us, was the treasurer, a director, and a member of the executive committee of the new company. On the 30th of January, 1900, four days after the company claims James W. Arrott, Jr., did agree to convey his patent to the new company, he wrote to his father a letter in which the following passage occurs:

"However, I was willing to accept the position offered, but I was not, nor will I give away that which I consider my own personal property, nor can I understand how the Standard Mfg. Co. could sell or give the impression that

it was selling something that did not belong to the company. I refer to the patents which I own and put into practical use. I feel that I have been ignored and that the results of my inventions have not been considered in proportion to the saving they have caused."

Mr. Arrott, Sr., immediately transmitted that letter to Mr. Ahrens, who was the president of the Standard Sanitary Manufacturing Company. On February 3, 1900, Mr. Ahrens wrote Mr. Arrott, Sr., acknowledging the receipt of the letter of Mr. Arrott, the younger. In the course of that letter, Mr. Ahrens states:

"Yours of January 31st. enclosing letter from J. W. Arrott, Jr., is received and has had my careful attention. At the last meeting of the Executive Committee, this matter came up and was fully discussed. All of the members of the committee recognized the value of the process introduced by your son, and all of us united in giving him due credit for it. We think he is entitled to recognition for what he has accomplished, and we supposed that this recognition would be or had already been given him by the Standard Mfg. Co."

We thus see from his letter of January 17, 1900, to Dawes, and his letter of January 30th to Mr. Arrott, Sr., that James W. Arrott, Jr., consistently asserted his right to the patent in controversy as against the Standard Sanitary Manufacturing Company. The minute that company made and recorded by its own secretary of the proceedings of January 26, 1900, convinces me that the testimony of Mr. Arrott as to what occurred on that occasion is correct. I do not mean to impute any intentional misstatement to any of the gentlemen who have testified on the other side, but I cannot avoid the conclusion that they are mistaken in thinking that Mr. Arrott assented on the occasion of the executive committee's meeting in January to the claim of the company.

Upon a consideration of the whole evidence, I am of opinion that the company has failed to substantiate its claim to equitable ownership of, or to any interest in, the patent in controversy. Let decrees be drawn, in accordance with the views expressed in the foregoing opinion, in favor of James W. Arrott, Jr.