## DANIEL v. RESTEIN & CO.

(Circuit Court, E. D. Pennsylvania. July 1, 1904.)

### No. 2.

1. PATENTS—ANTICIPATION—PACKING.

The Miller patent, No. 524,178, for a packing consisting of two wedges shaped sections, intended to slide upon each other, with a yielding cushion back of one of said sections, by means of which the steam pressure transmitted to the sliding sections causes that side of the strip to widen, forming a tight joint, describes an effective and useful device; but the claims are not limited as to the materials to be used, and, the form of construction having been in use in a prior unpatented packing, the patent is void for anticipation.

2. SAME.

Anticipation is not avoided because the anticipating structure, while mechanically the same, is not so efficient as that of the patent, owing to the use in the latter of different and better materials, which are not, however, claimed as a feature of the invention.

3. SAME—UNPATENTED DEVICE—EXTENT OF PRIOR USE.

To constitute an anticipation by an unpatented device, it is not necessary that it should have come into general use, but it is sufficient if it was in actual and practical use by a number of persons.

In Equity. Suit for infringement of letters patent No. 524,178, for a packing, granted to N. B. Miller August 7, 1894. On final hearing.

¶ 3. See Patents, vol. 38, Cent. Dig. § 74.

Charles Howson, for complainant.
A. B. Stoughton, for defendants.

ARCHBALD, District Judge.[1]   There can be little doubt as to the high efficiency of the fibrous packing manufactured by the complainant, by reason of its self-sealing properties, by which the steam pressure operates to make it tight, without depending on the gland or follower yielding again when the pressure is lessened, and thus relieving friction.   This is due, however, under the evidence, to two things: (1) The material of which the different parts of the packing are composed; and (2) the form in which they are put together, the one being as important as the other—if the elaborate experiments which have been put in evidence are to be accepted—a similar combination of different materials in the same form not giving the same satisfactory results.   The packing is manufactured under a patent issued to N. B. Miller, August 7, 1894, the two claims of which are as follows:

"(1) The combination in a packing strip, of the wedge-shaped sections A and B, the inclined surfaces of said sections adjoining, with a yielding cushion back of one of said sections, the whole confined within a casing, substantially as described.

"(2) The combination in a packing, of the wedge-shaped sections, A and B, the inclined surfaces of each section adjoining, with an absorbent cushion confined in a braided casing and situated back of one of said sections, the whole combined in an outer casing, substantially as described."

The following is a perspective and a sectional view of the packing; A and B being the wedge-shaped parts, and C the cushion:

It will be noted that nothing is said in the claims with regard to the material of which these parts are to be respectively composed, except as in the one the cushion is required to be yielding, and in the other absorbent.   The specifications, however, disclose that the wedge-shaped sections are intended to slide upon each other, so that the packing may widen out or extend itself laterally under pressure, from which it is argued that a material which will produce that result is necessarily implied.   But all that is in fact stated on the subject is that the sections shall be made of flexible material—preferably of alternate layers of duck and rubber—which shall at the same time be comparatively stiff, and yet sufficiently yielding to effect their purpose, the use of a lubri-

[1] Specially assigned.

cant such as powdered graphite between the sections to facilitate sliding being also suggested; and that the cushion shall be preferably made of twisted cotton, because of its absorbent qualities, and its ability to transmit lateral pressure through the various layers of the packing. In these suggestions the inventor does not commit or confine himself to any specific material, nor base his invention upon it, and it would unwarrantably restrict its scope to so hold. The patent which covers it is therefore to be taken as essentially one for a mechanical combination or structure, and whatever is fashioned after it in this respect falls within its terms, whatever the material, and constitutes an infringement, or, conversely, if preceding it in time, amounts to an anticipation.

It must be conceded that, confining ourselves to what is disclosed in previous patents, there is nothing to be found which affects the novelty of the invention. It is true that, in several of these, wedge-shaped or diagonal sections are employed, the manifest purpose of which, the same as here, is to effect a spreading or widening out of the packing to make a more perfect fit around the piston, with a corresponding yielding—as we may fairly assume—by which the friction is lessened when the pressure is relieved. Thus, in the Furse (1878), a series of conical or obliquely cut rings, reversely arranged upon each other, is found, with flat rings or washers interposed between each set, in much the same way as the cushion in the complainant's packing, the object of which is declared to be in order that the moving parts—piston, ram, or whatever it be—may work with minimum friction. So, in the Law (1887), one form which is given consists of triangular or wedge-shaped rings put together in the same way as they are here; the purpose being, as it is stated, to force the inner surface of one segment inwardly against the rod, and the outer surface of the other outwardly against the stuffing box. Here, also, the material specifically designated to be used is one made up of alternate layers of duck and rubber, the same as that which is given preference in the patent before us. Again, in the Turner (English, 1891), we have squares of packing made up of triangular pieces, in which form, it is said, the sections, being wedge-shaped and sliding on each other, are easily flattened, and, with very little pressure from the gland, will be molded into the stuffing box, and kept in close contact with the piston rod or other moving part. And finally, in the Walsh (1890), a cushion combined with a separate wearing section is shown; the one being of rubber, and the other of flexible metal; the whole, as well as each part, being inclosed in a braided envelope or cover of fibrous texture, adapted to absorb and retain the lubricants applied.

But notwithstanding the fact that practically every feature of the present device, in one form or another, appears in these references, a new and distinct combination of them has been made by the inventor, by which a packing of novel character and efficiency has been produced. In reaching this conclusion, however, the ground upon which this novelty rests, which has already been indicated, should be clearly recognized. It is not to be predicated upon the sliding of the wedge-shaped sections on each other to effect a self-sealing, on which so much stress is laid. Accepting this as a real and valuable property, and as

effectively developed in the packing under discussion, it must at the same time be regarded as present to a degree in every one of the references given in which wedge-shaped sections are employed; the necessary result as well as the declared purpose in each, as has been pointed out, being to widen out the packing so as to produce it. The idea is also common to the general packing art—metallic as well as fibrous—as appears by the Gerry (1878), where it is distinctly described and claimed. The legal claim to novelty, therefore, in the complainant's packing, lies simply in the special combination of cushion and wedge-shaped parts, by which the inventor has undertaken to bring this action about; the increased effectiveness, if any, however produced, outside of this, going merely to its general merit.

If this conclusion be correct, the packing manufactured by the complainant, while good as against the record references which have been brought forward, was unfortunately anticipated by a packing devised by one W. H. Miller, father of N. B. Miller, who took out the patent in suit. This earlier packing, which was put out in 1882, was identical in structure with that manufactured by the complainant under the patent, differing only from it in the materials used. It had a cushion of hemp, instead of twisted cotton, and wedge-shaped sections, of which one was of solid rubber, and the other of cotton webbing, instead of each being made up, as in the complainant's packing, of alternate layers of the two; the whole being confined in a braided covering or casing. How any two devices could be closer, it is difficult to see; and, that the one fulfills the terms of the patent equally with the other, there can be no doubt. As we have already seen, all that is there required with regard to the cushion in either specifications or claims is that it shall be yielding and absorbent, which is just as true of hemp as of cotton; and, with regard to the diagonal sections, that the material shall be flexible, a quality which can be no more denied to rubber and cotton when used separately than when they are combined together. If now for the first time introduced, this packing would unquestionably constitute an infringement of the patent; and, having preceded it in time, it is, by the same consideration, an anticipation.

It is contended, however, that the two packings are distinguished by the results; the one being highly efficient, and the other not at all so; reliance for this being had upon the experiments which have been referred to. But as already intimated, the difference so established is one of degree, and not of mechanical structure, which alone is patentable; nor of function, which was common in the art and could not be so monopolized. It arises, undoubtedly, as pointed out above, from a wise selection of materials for the triangular sections, as well as the use of a lubricant between them to facilitate lateral sliding. The latter is suggested in the specifications, but does not enter into the claims any more than the material to be used, and is too obvious an expedient on which to base a pretension to novelty. As neither of the things, therefore, on which the superiority of the complainant's packing depends, enters into the invention as defined in the patent, they cannot be relied upon as final steps which sometimes distinguish success from failure, and make patentable that which otherwise would not be.

But it is said that the earlier packing was not successful commer-

cially—only twelve or fifteen hundred pounds being disposed of in all the years that it was upon the market—and that it never advanced beyond the experimental stage. This does not fairly represent the evidence, however, with regard to it. This was no incomplete or half-finished device, which was merely the subject of experiment. It was put into actual, if not extended, use, and not by one person, but by several. Bickerton & Co., by arrangement with Miller, who devised it, filled a number of different orders which the latter solicited and procured, collecting the bills for him, and taking out their commission. While some 50 pounds of the packing was finally left on their hands, where it remained until disposed of to the complainant shortly before this suit, this was not because of any dissatisfaction on the part of those who returned it, but because the order which they gave had not been filled in time, compelling them to secure other packing in its place. It was so well received, moreover, by Cartwright, McCurdy & Co., of Youngstown, Ohio, where it had been at first put on trial by Miller, that, when after receiving several intermediate orders he did not come around again, a sample was given to W. C. Henderson, of Pittsburg, to make some like it; and he, in turn, after obtaining the proper cores, put up about 200 pounds, which he sold to various parties under the name of Milling Combination Packing. That he went no further with it is due to the fact that he developed a packing of his own, which gave satisfaction, and was able to be sold at a less price. Prior knowledge and use by a single person has been held to be sufficient to negative novelty. Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821. And there is far more than that here. It was not necessary that it should go into general use or become a commercial factor, as suggested; and that it did not may well be ascribed, under the evidence, to the fact that it was not a cheap packing, and was not "pushed." I see no way for escaping the conclusion that it clearly anticipated that which is covered by the patent in suit, which it therefore deprives of its novelty.

Let a decree be drawn dismissing the bill, with costs.