J. L. MOTT IRON WORKS v. STANDARD SANITARY MFG. CO.

(Circuit Court of Appeals, Third Circuit. February 6, 1908.)

No. 53.

1. PATENTS—INVENTION—DREDGER FOR ENAMELING.

The Arrott patent, No. 633,941, for a dredger for pulverulent material used in enameling bath tubs, etc., was not anticipated, and discloses invention, the device being one of a high order of merit and usefulness. Also *held* infringed.

2. SAME.

> The contribution to an important industry of a device that is labor-saving and effective, and relieves to a degree work under fierce heat conditions, is meritorious in the patent system, and rises to the plane of the humane.

Appeal from the Circuit Court of the United States for the District of New Jersey.

For opinion below, see 152 Fed. 635.

W. P. Preble, Jr., for appellant.

Marshall A. Christy and George H. Christy, for appellee.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the Standard Sanitary Manufacturing Company, owner of patent No. 633,941, granted September 26, 1899, to James W. Arrott, Jr., for a dredger for pulverulent material, brought suit against the J. L. Mott Iron Works for the infringement thereof. That court adjudged the patent valid and its three claims infringed. From such decree the latter appealed.

The process involved is the enameling of bath tubs and like wares, which consists in evenly distributing powered glass through a sieve on cast-iron tubs raised to a high heat. This sprinkling process is repeated several times and after each the tub is reheated. The glass fluxes and makes the thick glassy coating or enamel of the modern tub. To properly enamel requires that exactly the right amount of powdered glass be sprinkled through the sieve; that it be distributed uniformly over the tub; and fall at right angles to the tub surface being treated. Failure to do so makes a lumpy or wavy surface and an imperfect tub.

In the practice both prior and subsequent to the patent, the heated tub was placed in a cradle and its position so shifted that an enameler could let the glass fall at right angles to its surface. In the old system he held the sieve with one hand and with the other struck its handle with a pronged tool, and thus dropped the powder through the sieve. It will be noted this work was done under great strain. The tubs were heated to some ten or eleven hundred degrees Fahrenheit and the sieve handle was short to enable the workmen with one hand to counterbalance the glass in the sieve. With the hand thus strained to support, he must at the same time horizontally move the sieve to secure uniform lateral distribution, and meanwhile the force and frequency of the blows given by the other hand must be such as to discharge the precise amount of glass. Moreover, as the powder came through in distinct puffs or waves after each blow, the sieve must, to avoid the injurious wave effect, be moving when the blow was struck. The heat was such as to compel the use of asbestos clothes, apron, gloves, and face screens. These difficulties are stated by different witnesses:

> "With the hand dredge it was very difficult to distribute the enamel evenly on the surface of the work on account of irregular rapping. When a man started in on a tub he could rap pretty fast, but toward the end of the operation he would get tired and rap more slowly. This made it enamel uneven. Sometimes on very large tubs, during the process of enameling, my arm would

give out. and I would have to rest for a second or so on account of my arm being seized with cramps, which most of the enamelers experienced the same. Some enamelers that I worked with wore out their arms and had to stop work; * * * it was very hard to operate the hand dredge * * * on account of the difficulty to learn the right rap. That is the most difficult proposition in the hand dredge, is the rap. * * * The operation of handling a hand-tapping dredge was not only difficult, but laborious, and before a man could become expert in his work, he was compelled to master the knack of depositing the enamel evenly upon the surface of the casting. It was always necessary to not only have a man of good judgment, but a man of physical strength. The constant tapping, and standing in front of a hot casting at the same time, was very exhausting. During the summer months, it was almost an impossibility to keep the furnaces fully manned, by reason of the men becoming exhausted at their work, largely on account of the labor connected with the applying of the enamel to the casting."

By this method a skilled workman could enamel one tub an hour. Now the improvement made by Arrott was simple but effective. It converted an ordinary sieve, by using a pneumatic hammer in connection therewith, into an automatic sprinkling machine. What the patentee did is thus described in the specification:

"The object of this invention is to provide an automatic tapper or agitator which will deliver a succession of rapid blows against the side or end of the dredger and while relieving the workman of a great deal of labor causes the pulverulent material or powder to be evenly distributed and to be uniformly discharged. The device which I employ for this purpose is preferably a pneumatic hammer, the piston or plunger of which is elongated and fitted to the hollow handle of the dredger so as to reciprocate within the latter and strike the end or side of the dredger with every forward stroke."

The proofs show that with Arrott's dredge a man can by touching a valve button secure a rapping action which is rapid, continuous, and uniform. At the same time his hands are each free both to sustain the load and to move the sieve over the surface and get a uniform lateral powder distribution. The blows are so rapid and regular that the powder, instead of jetting through the sieve in a puff or distinct wave with each hand-struck blow, flows in a practically continuous, regular sheet. This device subjects an enameler to a much less strain in the face of terrific heat, while it enables him to enamel three tubs an hour, and such work can be done by less skilled and easier taught men. While there were other improvements which enabled a factory to handle more tubs, and to that extent may be said to have helped produce this substantial increase of output, yet it is manifest that, save for Arrott's device, these other mechanical improvements would be of no avail owing to the limitations of human strength and endurance, which confined the old enameling process to impassable product bounds.

The prior art disclosed no such device as Arrott's, and we are of opinion it was his individual work, and involved patentability. It is easy now to minimize its importance and say it consisted simply in applying a pneumatic hammer to a sieve, but the fact remains that, with the difficulty of enameling keenly recognized in the art, no one made such combination. Indeed its inventive character is evidenced by the alleged anticipatory uses in the respondent's works. The combined use of a pneumatic hammer with a sieve was some years before there tried and abandoned. The evidence of exact practice is not such as to establish an anticipatory use, for it is contradictory as to how

the hammer was applied, but the highly significant fact is that, even with the thought of a possible combination of pneumatic hammer and sieve suggested to men skilled in that art, they were not able to mechanically place the two in successful operative relation. But Arrott did just what they failed to do. He contributed to an important industry a device, labor-saving, effective, and which, in relieving to a degree labor under fierce heat conditions, rose to the plane of the humane. It was these results which the respondent failed to secure that make Arrott's work invention, and theirs a fruitless and abandoned experiment. Their work began and ended in groping trial. The varying positions, at different times, of the pneumatic hammer with relation to both handle and sieve evidence those tentative, uncertain steps of experiment, which neither forestall the work of, or withhold the reward from, the real inventor. So holding, we are of opinion the court below committed no error in adjudging the patent valid, and respondent's dredge, which is a mere duplication of complainant's device, an infringement. The appeal is therefore dismissed.