## STANDARD SANITARY MFG. CO. v. IRON CITY SANITARY MFG. CO.

### (Circuit Court of Appeals, Third Circuit. January 29, 1915.)

### No. 1875.

1. PATENTS ⬅➡328—ANTICIPATION—DREDGER FOR PULVERULENT MATERIAL.
   The Arrott patent, No. 633,941, for a dredger for pulverulent material, used in the enameling of cast iron sanitary ware, *held* void for anticipation by a device invented by one Hayssen, which accomplished the same result in substantially the same way, and was shown beyond reasonable doubt to have been put into actual, practical, and successful use by the inventor some two years before the application for the Arrott patent, and to have been kept in continuous use for more than three years thereafter.

2. PATENTS ⬅➡51—ANTICIPATION—ANTICIPATING INVENTION.
   To constitute an invention which may be an anticipation, it is not necessary that it should have gone into general use, but is sufficient that it was successfully put into actual and practical use; and it is none the less an invention because its use was afterwards temporarily abandoned.

   [Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 66–69, 72, 74; Dec. Dig. ⬅➡51.]

Appeal from the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Suit in equity by the Standard Sanitary Manufacturing Company against the Iron City Sanitary Manufacturing Company. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 213 Fed. 638.

Marshall A. Christy and Christy & Christy, all of Pittsburgh, Pa., for appellant.

James N. Cooke, James I. Kay, and Charles A. Fagan, all of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an appeal from the final decree of the United States District Court for the Western District of Pennsylvania, dismissing the bill of complaint charging the defendant with infringement of United States letters patent No. 633,941, for dredger for pulverulent material, granted to James W. Arrott, Jr., on September 26, 1899. The defendant admitted infringement of the patent, if valid, but denied validity of the patent, upon the ground that the invention claimed by it was anticipated by an invention of one Herman Hayssen, made in 1895, and previously known and publicly used in 1896, and continuously for several years thereafter, in the plant of Kohler, Hayssen & Stehn Manufacturing Company, a predecessor of J. M. Kohler Sons Company, at Sheboygan, Wis.

In 1899, the year in which the patent was granted to Arrott, the complainant corporation was organized, and in 1905 acquired the patent by assignment from Arrott, after litigation unimportant for present consideration, and installed and used the patented device in its various plants. In the year 1910 one Edwin L. Wayman proposed and carried into execution a scheme, in which neither the defendant nor its predecessor was a party, whereby he obtained from the complainant title to the patent, and granted licenses thereunder to manufacturers of sanitary enameled iron ware, conditional upon certain trade restrictions, consisting mainly in the limitation of output and the maintenance of prices for sale and resale of the manufactured product. This transaction was attacked by the United States as an illegal combination in restraint of trade, violative of the provisions of the Sherman Anti-Trust Act, and was avoided by the decision of the Supreme Court in Sanitary Manufacturing Co. v. United States, 226 U. S. 20, 33 Sup. Ct. 9, 57 L. Ed. 107. Pending the litigation instituted by the government, Wayman brought this suit, and after the termination of that litigation and the reassignment of the patent the complainant was substituted for Wayman as a party to this action.

[1] The art to which the patent is claimed to be a contribution is the manufacture of porcelain enamel cast-iron sanitary ware, such as bath-tubs, bowls, sinks, and other articles made of cast iron and covered with a vitreous, smooth, and glassy coating of enamel. Prior to the invention of the two devices in controversy, cast iron receptacles were enameled entirely by hand. The article to be enameled, as, for instance, a bath-tub, was subjected to a high temperature and brought to a red heat, and then the enamel, consisting of material closely akin to powdered glass, was dusted and evenly distributed over its heated surface, to which it immediately adhered and formed the desired coating. This work was performed by an operator sifting the pulverulent material upon the heated tub by means of a tool known as a hand dredger. A hand dredger was nothing more than a circular tin pan with a wire mesh bottom, attached to and extending from the end of a hickory handle. The operator held the dredger by one hand and arm, and with a stick or bar held by the other struck or rapped the handle of the dredger by blows of such strength and uniformity as to cause the powdered glass to sift through the mesh bottom of the receptacle and fall in even waves upon the surface of the

tub, which was moved and adjusted to meet at right angles the fall and flow of the powder. This operation required skill and endurance. It was difficult to perform, because of the tendency of the operator to change and reduce the strength and regularity of the blows with the increasing fatigue of holding and handling the dredger, causing a corresponding irregularity and unevenness in the enamel coating.

Hand-operated dredgers were old. Arrott conceived the idea that the uniform distribution of the pulverulent material could be increased, and the fatigue of the operator decreased, and the output of the product multiplied, by using an automatic hammer upon the old hand dredger, and secured letters patent for a device in which he made three claims of invention, as follows:

1. A dredger or sifter, consisting of a screen or sieve and a supporting handle, in combination with a pneumatic agitator attached to the dredger and adapted to vibrate the sieve, substantially as described.

2. A dredger or sifter, consisting of a sieve and a handle in combination with an automatic agitator, secured to and carried by the dredger and adapted to agitate or vibrate the same, substantially as described.

3. A dredger or sifter, comprising a sieve and handle and an automatic agitator secured thereto, with means for controlling the operation of said agitator, substantially as described.

No claim of invention was made for either the dredger or the pneumatic device employed to agitate the dredger. From the description in the specifications of the patentee's device, it appears that through a hollow handle of a dredger was injected a long piston, which was given a rapid reciprocal action by means of a pneumatic or automatic device attached to the handle, causing the moving piston to strike with regular blows the side of the sieve, thereby producing an agitation of the pulverulent material contained in it, and creating an even and regular flow or sifting of the material through the meshes.

The device of Hayssen was a small hammer operated by an ordinary pneumatic tool clamped upon the handle of the dredger near the sieve, so that when in operation it rapped the handle, and by the transmitted vibrations jarred or agitated the contents of the sieve, causing the material to sift through with regularity and uniformity. Both the patented construction and the Hayssen device were operated by air pressure, controlled by a suitable valve on the handle. The entire change wrought by both of these tools was the substitution of a rapping by power for rapping by hand.

The process of enameling sanitary articles, the conditions which existed in the prior art, the problems presented, and the extent to which they were solved by Arrott, are set forth in the opinions of the District Court and of this court in the case of Standard Sanitary Manufacturing Co. v. J. L. Mott Iron Works (C. C.) 152 Fed. 635, and J. L. Mott Iron Works v. Standard Sanitary Manufacturing Co., 159 Fed. 135, 86 C. C. A. 325.

In order to determine whether Arrott's device was anticipated by the Hayssen device, certain dates are important. It was found by Judge Acheson in the case of Arrott v. Standard Manufacturing Co.

(C. C.) 131 Fed. 457, 458, and not disputed in this case, that Arrott's original conception dates back to February 14, 1898. It appears that Arrott made application for a patent on March 21, 1899, and that letters patent were granted him on September 26, 1899.

The time at which Hayssen conceived the idea of his device was in the latter part of 1895, and the period in which the tool was made and put into use was the early part of 1896. These dates are established by evidence fixing the dates of certain events prior to which the tool was devised and made, and in connection with which the tool was used. The Kohler, Hayssen & Stehn Manufacturing Company was a small concern manufacturing enamel ware in limited quantities. The molds for castings were quite heavy, and in that year the company started to install apparatus operated by compressed air for lifting them, and in the early part of the year 1896 built an air compressor. Hayssen, who was vice president of the company and being interested in the pneumatic feature of the apparatus which it was then installing, conceived the idea that the rapping and agitation of a dredger might be accomplished by pneumatic means, and designed and had made a small pneumatic hammer, and attached the same to the handle of one of the dredgers then in use in the plant. This hammer is now in evidence. As this was done before the installation of the compressed air hoisting plant had been completed, Hayssen took the device to a saloon near by and conducted his tests by a beer pump. The lack of capacity of the compressed air plant to supply air for the tests, due to its incompletion, was of a date established from the books of the company, and established with sufficient certainty to indicate that the tool was made and tested in the early part of 1896. Connections were then made between the compressed air chamber and the enameling room of the plant, for the purpose of conveying compressed air to the pneumatic device of Hayssen. When the compressed air plant started, the enameling operators began to use Hayssen's invention. The precise date is not established, but that it was in the early part of 1896 is without question.

The defendant maintained that the Hayssen device was within the test of invention prescribed by the Supreme Court in Coffin v. Ogden, 18 Wall. 120, 21 L. Ed. 821, and followed in Barbed Wire Case, 143 U. S. 275, 12 Sup. Ct. 443, 450, 36 L. Ed. 154, and in many other cases:

"That the invention or discovery * * * must have been complete and capable of producing the result sought to be accomplished."

In proof of its contention, the defendant produced much testimony.

The inventor testified to the conception of his invention, and both the inventor and his business partner testified to its installation in their works early in 1896, and to its successful use for a period of several years.

The machinist who made the device testified to the installation of air connections for the use of the device and that it was employed for the purpose for which it was made.

One enameler testified to using it in the forenoon every day from 1896 to 1899, explaining that in the afternoon the demand for power upon the air compressor by the hoisting apparatus caused an insufficient

and irregular supply of air to the pneumatic dredger.   Four witnesses testified to using the pneumatic dredger from 1896 to 1899, with a regularity controlled by the regularity of air pressure, and three witnesses testified to the same effect, covering a period from 1899 to 1900 or 1901.   They all testified to the success of the appliance in turning out commercial products.

Approximately 20 witnesses who were not enamelers testified that at different dates from 1896 to 1901 they saw the pneumatic dredger used.

There is no evidence showing the precise number of tubs enameled by the Hayssen device.   One witness testified, however, that a good many hundred were enameled from 1895 to 1899.   Throughout this period the pneumatic dredger was hanging in a place assigned to it in the enameling room, connected with, or ready for connection with, the air supply.

The defendant introduced a letter written by E. L. Dawes, vice president of the complainant company, dated November 22, 1899, addressed to the Kohler Company, in which he said:

> "When at your place about two years since, Mr. Hayssen told us about the air valve that he had gotten possession of, using the same on a dredger for the purpose of dusting the powder on your work, etc.   Now, what we are after is that the S. M. Company claim a patent on a pneumatic dredger," etc.

This letter conforms to the testimony of a witness who said that in the summer of 1897 Dawes visited the Kohler plant to inspect its compressed air hoisting machinery at a period when the automatic dredger was and theretofore had been in use, and was introduced to prove by the admission of Dawes that the Standard Company, the predecessor of the complainant, knew as early as the summer of 1897 that the Hayssen device was in existence and in use prior to the invention of Arrott in February, 1898.

The witnesses for the defendant were not impeached, and their testimony was but little disturbed by the testimony of rebutting witnesses.   Opposed to the testimony offered by the defendant in proof of prior knowledge and use of the Hayssen device, the complainant produced three witnesses, one of whom was Arthur H. Hayssen, the son of the inventor of the alleged infringing device, who gave the strongest testimony for the complainant.   He testified that he entered the employ of Kohler, Hayssen & Stehn Manufacturing Company in the latter part of the year 1897, and left their employ in 1910; that his work, which was of a general character, brought him into the enameling shop for six or eight months before he left, and that he was familiar with the tools used and methods employed in that department.   He further testified that a pneumatic dredger was used in making commercial enamel ware, but was not used regularly, and that it produced but a small percentage of the output, and that the dredger was used only for trials in which at times the enamel came through evenly and at other times it came through in bunches, and that as a result of his own experiments he considered it an unsuccessful factory tool for regular use.   From an observation of its use, E. L. Dawes testified that he was of the same opinion.

The testimony convincingly shows that the Hayssen dredger was known and used in the spring of 1896, that it did as much work as the hand dredger with less labor, that when given a uniform supply of air it sifted glass evenly and uniformly, and that it attained the same result as that attained by the Arrott patent in substantially the same way. The testimony further shows that the plant in which the Hayssen device was employed was especially arranged for its use by connecting the enameling room with the air compressor, and that it was in constant, almost daily, use, from the spring of 1896 until 1899, during which time it was successfully used in finishing commercial products.

While the Hayssen device was in continuous use from 1896 to 1899, it appears that during the period between the years 1900 and 1910 it was not in continuous use, and that in 1905 Kohler removed the pneumatic hammer and the valve from the dredger and put them away in his office, where they remained until 1910. At about that time Wayman, the assignee of the Arrott patent, formed the combination to control the licensing of the Arrott dredger under terms and restrictions afterward held by the Supreme Court to be violative of the Sherman Anti-Trust Law, and came in conflict in business relations with the defendant company, whereupon Kohler brought out the Hayssen device, and equipped a number of dredgers with automatic hammers like the original Hayssen hammer, and used them in its plant. Because of the use of pneumatic dredgers by the defendant, the precise type of which is not disclosed by the evidence, though admitted to infringe the Arrott patent, if valid, this suit was instituted by Wayman.

The reply of the complainant to the defense of anticipation is twofold:

First. That the evidence offered does not establish, with the high degree of certainty required by law, the construction and operation of a completed and useful machine prior to the date of Arrott's invention.

Second. That the Hayssen device was merely an experiment, and that the nonuse of it by its owner for the considerable period of years between 1900 and 1910 constituted an abandonment of that experiment, and that this case is similar to and controlled by several other cases, in which the validity of the Arrott patent was upheld, in each of which the defense was founded upon an anticipation.

As to the first contention, we are satisfied that the defendant has proved by evidence that is convincing beyond a reasonable doubt (Cantrell v. Wallick, 117 U. S. 689, 6 Sup. Ct. 970, 29 L. Ed. 1017) that Hayssen constructed and completed and successfully put into operation, in the early part of 1896, his pneumatic apparatus for the manufacture of commercial enamel ware, and continued using it, producing the results sought by it to be accomplished, down to at least 1899.

The second contention, namely, that the defense in this suit is the same as the defense made in other suits in which Arrott's patent was in litigation and its validity upheld, is important for consideration, because, so far as the statement goes, it is correct.

In the case of Arrott v. Standard Sanitary Manufacturing Co. (C. C.) 131 Fed. 457, which was a suit for infringement growing out of a dispute between the patentee himself and the complainant as the assignee of the patent, an alleged prior knowledge and use of the patented dredger by one Oscar Marshchuetz was the anticipation relied upon as one of the grounds of defense. Judge Acheson found the allegation of prior invention and use unsupported by testimony and in fact contradicted upon the question of priority of date, and that the Marshchuetz device was only an unsuccessful and abandoned experiment. In his opinion Judge Acheson says:

"Marshchuetz, testifying for the company, states that, after it [his device] was used *off and on for about three months*, it was put aside and never again used. * * * Not an anticipating date named by any one of them is fixed by any exhibit, book entry, letter, or written memorandum whatever. These witnesses, who were mostly workmen at the Ahrens & Ott establishment, did not agree among themselves. Their testimony was vague and unsatisfactory. * * * The witnesses who testified to the alleged prior device and use by Marshchuetz are met by a number of opposing witnesses, whose testimony conversely shows that the Marshchuetz device was not made or used until October 11, 1898" (that is, later than the date of Arrott's invention).

In the appeal of that case to this court, being Standard Sanitary Manufacturing Co. v. Arrott, 135 Fed. 750, 68 C. C. A. 388, the defense of prior use was not urged, and the decree of the court below was affirmed, overruling the claim of the defendant to an equable ownership of the patent.

In the case of Standard Sanitary Manufacturing Co. v. J. L. Mott Iron Works Co. (C. C.) 152 Fed. 635, prior invention was relied upon as a defense to a suit for infringement of the Arrott patent, and upon this subject, Judge Cross said:

"The defendant, however, alleges that the patent is invalid because of the prior use of an unpatented pneumatic device of a like character to accomplish the same purpose. In support of this contention considerable evidence has been produced, from which it appears that *a few bath-tubs* were enameled with some degree of success by the defendant in the fall of 1896 by a device *in some respects similar* to that defined in the complainant's patent. But I think that the evidence, considered as a whole, discloses nothing more than an *abandoned experiment*. The device—there was but one—was in operation, so the workmen who use it say, *off and on for about a week or ten days*, although one or two other witnesses intimate that it was used for a somewhat longer period. It was then unquestionably *dismantled and was not used again*. * * * The hammer was being changed hourly or daily from one position to another, which tends strongly to show that the device was purely experimental."

The case was appealed to this court and is reported as J. L. Mott Iron Co. v. Standard Sanitary Manufacturing Co., 159 Fed. 135, 86 C. C. A. 325, and the decree of the court below was affirmed.

These are the two cases relied upon by the complainant as analogous to and ruling the case at bar. In each of these cases the defense of prior invention was set up, but in each the court found that the device relied upon as an anticipation was not an invention, but was an experiment that had been abandoned. The one point of similarity between the defenses in these two cases and the defense in the case under consideration is that the devices relied upon as anticipations were in

each instance abandoned; but the point of distinction between the defenses in the two cases cited and the defense in the case in issue is that in the former the devices offered as anticipations were proven to have been merely experiments, while in the latter the device was proven to have been an invention. The devices in the former cases had never passed beyond experimental stages, while the device in the latter case was known and successfully used for the requisite period before invention by the patentee. The former were not shown to have been devices mechanically successful in producing commercial products, while the latter was proven capable at the time of its completion and first employment, as well as during its continued use, to produce the result sought to be accomplished. In the hands of the one who invented and used it, the latter device fulfilled all the requirements of the law to make it an invention.

[2] The Hayssen device, however, was never in general use. It was used only by the company of its inventor and by its successor. To be an invention, and to be one that will anticipate a subsequently invented device, it is not necessary that it should have come into general use; but it is sufficient, if it was in actual and practical use by a number of persons (Daniel v. Restin Co. [C. C.] 131 Fed. 469), and if completed and capable of producing the result sought to be accomplished. Being thus an invention, it is none the less an invention if, after the period in which it was first known and used, it was temporarily abandoned.

Edwin L. Wayman v. Louis Lipp Co., 222 Fed. 679, was a case growing out of the illegal combination previously referred to, and instituted by the original complainant in this action, to enjoin the Louis Lipp Company, using a device claimed to infringe the Arrott patent, heard in the District Court of the United States for the Southern District of Ohio, by stipulation, upon the same testimony presented in this case, and decided February 28, 1912. In that case the court denied a motion for preliminary injunction upon the same ground upon which a similar motion was later denied in this case, and upon which ultimately this case was decided. Each court followed the rule laid down in Buser v. Novelty Co., 151 Fed. 478, 81 C. C. A. 16, in which Cochran, Judge, in reviewing the authorities and speaking for the court, said:

"If, however, the machine or other thing is complete, and capable of producing the result sought to be accomplished, it has passed the experimental stage, and becomes an invention; and, in order that it may constitute an anticipation, it is immaterial how well it becomes known, or how much it is used. * * * Indeed, it has been held that if the alleged invention is complete, and capable of producing the result sought to be accomplished, though it may never have been used, it is an invention and an anticipation. * * * Where the idea of the machine has been conceived, and the conception carried into effect by the construction of the machine, which is used, or is capable of being used, for the purpose for which it was designed, it is no longer an experiment, but an invention; and the subsequent abandonment of the use of the machine does not render it an abandoned experiment, nor lessen its effect as an anticipation, which will invalidate a subsequent patent to another for substantially the same machine. * * * If, then, an alleged invention is in fact an invention, no subsequent abandonment of it can be said to be an abandoned experiment. At most, it is an abandoned invention; but an in-

`vention that has been abandoned is as much an anticipation, and to as great extent negatives novelty, as an invention that has not been abandoned."

We are of opinion that Hayssen's pneumatic hammer, when installed in the works of the inventor, was complete, and was capable of producing and did produce the result for which it was intended; that it was invented, known, and used nearly three years before the application of Arrott for letters patent on his invention; that its conception and construction are within the claims of Arrott's patent, in the essentials that the two devices accomplish the same purpose, by substantially the same means, operating in substantially the same way; that the abandonment of the use of the Hayssen device for a period of ten years, following its use for a period of three or four years, is unimportant, in that the abandonment was an abandonment of an invention, and not of an experiment, and does not affect our conclusion that the District Court, in holding the Hayssen device an anticipation of the Arrott invention and in dismissing the complainant's bill, was without error.

The decree below is affirmed.