### HARDISON et al. v. BRINKMAN.

(Circuit Court of Appeals, Ninth Circuit. November 4, 1907.)

No. 1,421.

1. PATENTS—INFRINGEMENT—CASING PERFORATOR FOR WELLS.

The Hardison patents, No. 650,318 and No. 686,691, for automatic casing perforators for deep wells, are neither of them for a pioneer invention, but both cover combinations of old elements only; the combinations being patentable improvements on the prior art and entitled to protection against infringement, but not such as to entitle the claims to a broad construction. As so construed, neither patent is infringed by the machine of the Brinkman patent, No. 726,625, which contains no friction device; that being an essential element in the combination of both the Hardison patents.

2. SAME—CONSTRUCTION OF CLAIMS—IMPROVEMENT PATENTS.

In a combination patent for an improvement in the arrangement or adaptation of old elements, the inventor is not entitled to a broad interpretation of the doctrine of mechanical equivalents, so as to cover a device not specifically included in his claims and specification.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, §§ 249, 254½.]

3. SAME—LIMITATION BY SPECIFIC DESCRIPTION.

A patentee is bound by his claims, and cannot claim a broader invention than that which he has specifically described therein, even though he may have been entitled to make broader claims.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 241.]

Appeal from the Circuit Court of the United States for the Northern Division of the Southern District of California.

The appellants brought suit in the court below to enjoin the alleged infringement of two letters patent issued to E. A. Hardison on May 22, 1900, and November 12, 1901, numbered respectively, 650,318 and 686,691, for improvements in automatic casing perforators for deep wells. The earlier of these two patents, which will be herein referred to as the "first Hardison patent," is described as follows: A wheel-carrier slide, B, in a slideway, a, in the body, A; the upper ends of the carrier being provided with a transverse slot in which is mounted the axle, c, of the perforating wheel, C, the body of the perforator being provided with a diagonal slot, a'. The lower end of the slot, a', forms the seat for the axle of the perforating-wheel when in an operating position. A latch is pivoted to the carrier-slide, B. The latch is provided with a finger, d, and with a catch, d'. On one side of the latch is a flat spring, fixed on the carrier, B, and pressing against the edge of the latch. The bottom of the body portion of the perforator is provided with a seat or socket, a''', adapted to receive this finger, d, of the latch when the perforator is set to be lowered into the well, and with a shoulder or latch catch, a'', to receive the hook, d', of the latch when the perforator is to be

drawn out of the well. Attached to the lower end of the carrier, B, are bow springs, b, designated in the specification and claims as a friction device, the office of which is to engage the casing to temporarily hold the slide stationary with relation to the body of the perforator. In practical operation, when the tool is to be lowered into the casing, the friction device, b, will be inserted into the casing and the tool lowered somewhat, thus causing the body to descend along the slide, B, and at the same time the latch, D, is held to cause the finger, d, to engage the latch-holding catch, a'', so that the latch is held out of its catching position. When the tool has reached the desired place in the casing, the body, A, will be drawn up and the weight of the slide and the friction device, b, will hold the slide from immediately following the body of the tool, and as the latter rises the wheel, C, being acted upon by the wall of the guideway, a', is driven to one side, thus to project the spurs of the perforating-wheel outward to perforate the casing. It is then drawn up, and the points of the wheel pierce the casing at intervals, until the line of perforation has been made to the proper height. Then the tool is lowered a short distance, and the friction device will temporarily hold the slide, thus allowing the body to come down and to engage the latch which locks the slide to the body of the perforator. Then the tool may be drawn upward out of the casing. It will be observed that this device operates upon an upward movement only.

Hardison's second patent is for a perforator which operates upon a downward movement of the tool, thereby obtaining the advantage of the weight of the tool in making the perforation. In the second patent, the body of the perforator is the same as in the first, except that the diagonal slot has its position reversed, and is provided with an extension running parallel with the length of the body. The bottom of the oblique portion of the slot is at the center of the body of the perforator, and the top of the oblique portion thereof is to the side of the center. The result is that the axle of the perforating-wheel occupied by the oblique slide is projected outward towards the periphery of the body and operates to perforate on the downward stroke. In the second patent a latch is pivoted on the carrier as in the first, but it is provided only with a finger, in place of a finger and hook as in the first patent. At the lower end a friction device is used as in the first patent. Owing to the change of operation whereby the perforation is done upon the downward stroke, it is no longer necessary to lock the wheel-carrier to the body when it is desired to withdraw the perforator from the well; for the friction device by its contact with the interior of the casing holds the carrier in such a position as to cause the perforating-wheel to be drawn into the body of the perforator, so that in withdrawing the same there is no contact of the points of the perforating-wheel with the casing.

The perforator used by the appellee was patented to him on April 28. 1903, by letters patent No. 726,625, for an improvement in well-tube apparatus. This invention has a pointed wheel, a wheel carrier, sliding grooves in the body of the perforator, and diagonal slots, as in both the patents of Hardison. It has no friction device, however. The tool carrier has the opposite side arms thereof connected at their lower end by a plate, B², from which a depending rod, B³, extends; said rod being provided between its ends with a holding groove, B⁴, and at its lower end with a contact plate, B⁵. The portion of the rod, B³, beyond the head, A⁵, of the cylinder, is surrounded by a spring clasp, B⁶, adapted to seat in the groove, B⁴, and retain the spring under compression. In the operation of the invention the spring, C, is placed under tension by compressing the same, and is held in such position by the spring-clasp upon the rod of the tool-carrier, and the perforator is then lowered into the well tube. When it reaches the bottom thereof the contact plate bears upon the support there found, and the weight of the perforator and its connected parts forces the spring-clasp from the groove in the rod, thus tripping the spring, which by its expansion throws the cutter-wheel toward the top of the inclined slot and upward against the casing. The perforator is then raised from the bottom of the well to the point where it is desired to form the apertures, and the cutter-wheel rolls against the side of the casing in such upward movement without perforating the same. When the point to be cut has been reached, the tool is again lowered, and the tension-spring, by

holding the wheel in contact with the well-tube, permits the weight of the perforator by the inclined slot connection with the axis of the wheel to force the latter outward through the tube, so that each cutter upon the wheel forms an aperture as it contacts with the tube. When the perforating has been effected, the tube may be raised from the well, as such movement releases the cutting tool from the tubing.

The claims involved in the suit are the first claim of each of the Hardison patents. The first claim of the first patent reads as follows:

"1. A casing perforator comprising a body provided with an oblique way, a perforating wheel having its axle mounted to run in such way, a sliding wheel carrier in which the axle of the wheel is journaled to rotate, a friction device connected with the wheel carrier to engage the casing to temporarily hold the wheel carrier stationary with relation to the body of the perforator, a latch pivoted to the wheel carrier to hold the wheel carrier in its elevated position with relation to the body, and means for temporarily holding the latch out of engagement with its catch on the body of the perforator."

The first claim of the second Hardison patent is as follows:

"1. A casing perforator comprising a perforating tool carrier furnished with a frictional device for engagement with the well casing, a body with which the carrier is slidingly connected, a perforating tool mounted on the carrier to move laterally and longitudinally of the body, said body being furnished with a guide extending along the body and adapted and arranged to hold the perforating tool out of operative adjustment when said tool is at its lower position and inclined upwardly toward that side of the body from which the perforating tool is to project when in operative position, and means for temporarily holding the body from sliding down the carrier when the apparatus is descending with the frictional device in contact with the well casing."

The trial court found that the appellee had not infringed the claim of either patent, and dismissed the bill.

J. J. Scrivner and Chas. E. Townsend, for appellants.
Frederick S. Lyon, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The construction of the claims of the appellants' patents depends largely upon the question whether or not the inventions are of a primary nature. It becomes necessary, therefore, to consider the prior inventions and the state of the art. On May 27, 1884, A. W. Benson obtained a patent on a well-pipe cutter which exhibits the body provided with an oblique slide or guard, the axle of the perforating-wheel traveling therein, and guided thereby into and out of operative position in the same manner as in the appellants' perforators. The upper end of the slot is at the center of the body of the perforator, and the lower end thereof is toward the periphery thereof, so that as the cutter is moved downward in the slot the periphery of the perforating-wheel is projected beyond the body of the perforator. Bow springs are used as a friction device at the bottom to prevent the movement or turning of the perforator in the well casing. To move the perforator into or out of operative position a screw is used, which projects upward from the slotted piece through a threaded sleeve connected with the wheel carrier by means of a collar.

On April 12, 1898, A. J. Bramlette obtained a patent for a pipe slitter and perforator, which has a body and an oblique slot corresponding with the appellants' perforators. The oblique slot is so placed that its upper end is at the center of the body, and its lower end at or near

the edge of the body, so that the downward travel of the axle of the perforator wheel projects the cutter beyond the body and into operating position. A carrier is connected with the axle of the perforating-wheel, to which is attached a rope or cable leading out of the well. The perforator is lowered into the well to the desired depth, and upon the upward pull of the body the wheel will slide to the bottom of the slot and be brought into operative position. To withdraw the perforator from the well, the rope attached to the carrier will lift the perforating wheel to disengage it from the casing. There is evidence in the record that the Bramlette perforator had been extensively used prior to the time of the Hardison patents, that as many as 500 oil and water wells have been perforated therewith, and that at the time of the taking of the testimony in the court below about 20 well borers were using the same and paying royalty therefor.

Another patent prior to those of the appellants is the Harris patent, issued in 1879, for a device for extracting or splitting tubular casings of oil wells. In that device a swinging knife is pivoted in the body of the tool, and is so weighted as by gravitation to lie in operative position. To insert the tool in the well casing, the cutter is locked in inoperative position by means of a sliding rod, which catches in a notch therein, where it is held against the tension of a spring. The rod is held up in that position by the frictional device of bow springs at its lower end, which prevents the release of the cutter while it is being lowered into the well casing. When the tool has been inserted into the casing and moved downward to the point where perforations are to be made, the body is drawn upward, the friction device holds the rod stationary, whereby it is disengaged from the knife, and the knife instantly resumes its normal position and is brought into engagement with the casing. The perforation is accomplished by forcing the tool downward until the point of the knife is driven through the casing. The tool may be drawn upward a slight distance, and the body again lowered, and this may be continued to form a series of perforations. The effect of raising the tool is to throw the knife within the body of the carrier and out of engagement with the well casing. It is contended that this invention has no place in the prior art, for the reason that it was intended not to perforate, but to split casings, so as to cause them to collapse in order that they might be drawn from a well; but, as we have seen, it is apparent that it can be used for the purpose of perforating, and as it is furnished with a friction device connecting to a rod which engages the cutter and holds it out of engagement with the casing in lowering the tool into the well, and again in throwing it into operative position when the desired point has been reached, it is evident that it is an invention which is to be reckoned with in ascertaining the prior state of the art.

In these three devices which preceded the appellants' patents we find all the elements of the appellants' perforators. In the Benson and the Bramlette patents we find the perforating wheel; the oblique slots guiding the same to and from its operative position. In the Harris and Benson patents we find the use of a frictional device, and in the Harris patent such device is used for the same purpose and in substantially the same manner as in the appellants' perforators. The ap-

pellants lay much stress upon the automatic feature of their perforators, and contend that Hardison was the first to perfect an automatic tool. But it is clear that the Harris device is automatic in the same manner and to the same degree as those of Hardison. In brief, Hardison adopted the friction device of the Harris patent and combined it with the Bramlette patent. He was not the inventor of either a device or a combination that was wholly new, nor did he accomplish a new result. His inventions were mere improvements of what had gone before. They marked an advance in the art sufficient to be patentable and to deserve protection against an infringer who appropriates it or colorably invades it.

We next approach the question of infringement. The issuance of a patent to the appellee creates a prima facie presumption of a patentable difference from the inventions of Hardison. Miller v. Eagle Mfg. Co., 151 U. S. 186, 208, 14 Sup. Ct. 310, 38 L. Ed. 121. The appellee's perforator adopts the body of the Bramlette perforator, as does Hardison, with the exception that the operation is upon the downward instead of the upward stroke. But the appellee uses no friction device. He uses a coiled spring which in its normal position holds the carrier in operating position. When his perforator is once put in operation, the only part in contact with the casing is the body of the perforating wheel. In the place of a latch to lock the body from sliding down the carrier while being lowered into the well, he uses a catch to hold the carrier from sliding up the body, which it would otherwise do under the tension of the coiled spring; but to release that catch no friction device is necessary and none could be used. The Hardison perforators are put into operation by the tension of the friction device holding against the interior of the well casing and keeping the carrier stationary while the body is being pulled up and away from it. To put the appellee's perforator into operative position it is necessary only that it impinge momentarily against the bottom of the well. After that is done the rod below the carrier performs no further function, and at no time is frictional contact utilized. But in the Hardison perforators the function of the friction device is continuous and indispensable throughout the operation, and frictional contact with the interior of the well casing is the law of their operation from the time when the perforators are lowered into the well until they are removed therefrom.

Turning, then, to the claims of the Hardison patents, we have to inquire whether the appellee uses the same or similar means and adopts the substantial manner of co-operation of the means. It is contended that claim 1 of each patent is infringed. Claim 1 of the first Hardison patent specifies, among other elements:

"A friction device connected with the wheel-carrier to engage the casing to temporarily hold the wheel-carrier stationary with relation to the body of the perforator."

Claim 1 of the second Hardison patent specifies:

"A casing perforator comprising a perforating-tool carrier furnished with a friction device for engagement with the wheel-casing."

In both of these claims the combination is explicitly limited to the use of a friction device which at all times bears upon the interior of the well casing, and at all times governs and controls the action of the perforating wheel. In the appellee's perforator, as we have seen, there is and can be no friction device. A mechanical equivalent which may be substituted for an omitted mechanical element in a combination claim is one that performs the same function by applying the same force to the same object through the same means and mode of application. In a combination patent for an improvement in the arrangement or adaptation of old elements, the inventor is not entitled to a broad interpretation of the doctrine of mechanical equivalents, so as to cover a device not specifically included in his claims and specifications. Miller v. Eagle Mfg. Co., 151 U. S. 186, 14 Sup. Ct. 310, 38 L. Ed. 121. Without going further into the specifications of the claims of the appellants' patents, it is sufficient to say that the combinations, as we have pointed out, limited as they are by the prior state of the art, and explicitly stated as they are in the claims, distinguish the appellants' from the appellee's perforators, and the latter, lacking the essential element of the friction device, does not infringe. It is not necessary to inquire whether Hardison has by his claims unnecessarily limited his invention, or whether he might have so worded the same as to cover the combination which was adopted by the appellee. He must be held to the combination which is described and claimed so explicitly. Said Mr. Justice Bradley, in Keystone Bridge Company v. Phoenix Iron Company, 95 U. S. 274, 278, 24 L. Ed. 344:

"When a claim is so explicit, the courts cannot alter or enlarge it. If the patentees have not claimed the whole of their invention, and the omission has been the result of inadvertence, they should have sought to correct the error by a surrender of their patent and an application for a reissue. They cannot expect the courts to wade through the history of the art, and spell out what they might have claimed, but have not claimed. * * * But the courts have no right to enlarge a patent beyond the scope of its claim as allowed by the Patent Office, or the appellate tribunal to which contested applications are referred. When the terms of a claim in a patent are clear and distinct (as they always should be), the patentee, in a suit brought upon the patent, is bound by it. Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235. He can claim nothing beyond it. But the defendant may at all times, under proper pleadings, resort to prior use and the general history of the art to assail the validity of a patent or to restrain its construction. The door is then opened to the plaintiff to resort to the same kind of evidence in rebuttal; but he can never go beyond his claim. As patents are procured ex parte, the public is not bound by them; but the patentees are. And the latter cannot show that their invention is broader than the terms of their claim; or, if broader, they must be held to have surrendered the surplus to the public."

The decree is affirmed.