## YAWMAN & ERBE MFG. CO. v. VETTER DESK WORKS.

(Circuit Court of Appeals, Second Circuit.   January 14, 1908.)

### No. 101.

PATENTS—INFRINGEMENT—CARD INDEX CLAMP.

> The Yawman patent, No. 717,490, for a drawer for card indexes, claims 4, 5, 10, 11, and 12, which relate to a clamping device to hold the card follower in adjusted position, while not for a generic invention, but for a new combination of old elements, cover a device which remedies former defects and supplies a simple, efficient, durable, cheap, and easily manipulated card index clamp, and were not anticipated and disclose invention; also held infringed.

Appeal from the Circuit Court of the United States for the Western District of New York.

On appeal from a decree holding valid and infringed letters patent No. 717,490, granted December 30, 1902, to Philip H. Yawman for an improvement in drawers for card indexes, and granting an injunction and an accounting.

Osgood. & Davis, for appellant.
Church & Rich (Frederick F. Church, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The object of the invention of the Yawman patent is to provide an improved form of drawer for card indexes having suitable means, movable therein, to adjust the longitudinal space in the drawer for a greater or less number of cards or papers and to permit their being readily handled and inspected. The claims in controversy are 4, 5, 10, 11 and 12. They all relate to the clamping device whose office it is to hold the follower in the adjusted position. The defenses are lack of novelty and invention and noninfringement.

The clamp of the patent is a cheap and simple device; indeed its freedom from complexity is one of its principal claims to patentability. It may be conceded that the device is on the border line between invention and mechanical skill. But, because of its simplicity, efficiency and cheapness and the persistency with which the defendant insists upon using it, we are inclined to resolve any doubt which we may entertain in favor of the patent. The judge of the Circuit Court has carefully stated and analyzed the claims in controversy and differentiated the devices of the claims from those of the defendant's best references. He has also compared the defendant's devices with those of the claims and has demonstrated that the changes made by the defendant are colorable and inconsequential and do not avoid infringement. In all this, we agree and deem it unnecessary to add to what he has so clearly stated upon these subjects.

The invention is not a generic one, far from it. Every element of the claims, considered separately and in different invironment, was old, but Yawman was the first to assemble them in the combinations in controversy. By so doing he made an advance, which, though it did not go far, entitled him to protection. The parts of the patented clamp are few, simple, durable and easily assembled and manipulated. The follower may be stopped at any desired point and is not dependent upon engagement with holes, notches or teeth on the track or slots in the clamp. The Yawman clamp makes a broad, frictional connection with the track, the edge of the clamping plate "being adapted to engage the upper faces of the edges or guides on the track-plate," thus making a firm biting grip, which holds the follower against rearward movement. We do not find these attributes combined in any structure of the prior art. The patent is well within the principles enunciated in following decisions: Hobbs v. Beach, 180 U. S. 383, 21 Sup. Ct. 409, 45 L. Ed. 586; Magowan v. Packing Co., 141 U. S. 332, 12 Sup. Ct. 71, 35 L. Ed. 781; Davis v. Perry, 120 Fed. 941, 57 C. C. A. 231; Hutter v. Stopper Co., 128 Fed. 283, 62 C. C. A. 652. Indeed, the language of this court in the latter case might be paraphrased to fit the present case, as follows:

"The Yawman device seems to have remedied former defects and supplied what was needed, namely, a simple, efficient, durable, cheap and easily ma-

nipulated card index clamp. The fact that this result was accomplished by a simple change does not detract from its patentability."

The decree is affirmed with costs.

NOTE.—The following is the opinion of Hazel, District Judge, in the court below:

HAZEL, District Judge. The bill alleges infringement by the defendant corporation of claims 4, 5, 10, 11, and 12 of the complainant's patent, No. 717,490, issued to Philip H. Yawman December 20, 1902, which relates to improvements in, that class of files for card indexes which consist of a wooden drawer or receptacle with a movable follower block adjusted to the bottom thereof, a longitudinal track plate, and a clamping lever or locking bar capable of coming in biting engagement with the track. We are concerned in this cause with the clamping device which retains the follower in position to keep the cards in compact relation. The object of the patentee was to enable easy and rapid assembling of the parts in the manufacture of the file. The answer of the defendant challenges the validity of the patent for want of patentable novelty, alleges anticipation, and denies infringement. Claim 4 reads as follows:

"4. In a file, the combination, with a receptacle having a guide thereon and a follower mounted on the guide and movable in the receptacle, of a hook on the follower, a clamping plate normally resting upon the guide having the lip engaging beneath the hook, co-operating means between the hook and lip to prevent lateral movement of the clamping plate, and a spring arranged between the upper end of the plate and the follower to cause the engagement of the former with the guide."

Claim 5 has the same elements and includes a slide attached to the follower. Claim 10 includes open bearings on the follower block, instead of a hook, and specifies "a clamp pivoted on the bearings and held thereon by engagement of its free end with the track." Claim 11 embraces a spring by means of which the lower end of the clamp comes in contact with the track. Claim 12 has the addition of a movable plate at the bottom of the follower, and specifies that the bearings are open on the side towards the track. Claims 4 and 5 are specific, and the other claims mentioned broadly cover the invention. An analysis of the claims in suit shows that there is a groove in the bottom of the drawer or receptacle, in which is placed a metal strip or track, with a flange bent inwardly along each edge to form grooves and adjusted to retain a slide which is firmly attached to the bottom of the follower. The locking or clamping device is attached to the follower on its rear side, and when it is in position its lower or free end abuts on the track or guide. A spring is placed between the upper end of the lever and the follower, and is so adjusted that by pressure thereon from the lever the latter will be raised at its free end from the guide upon which it normally rests. By this operation the follower block is released and can be easily shifted in the desired direction. Attached to the rear portion of the follower and extending upwardly above the guide is a plate, the upper ends of which are turned over in the form of a hook. The clamping plate of metal is so stamped as to produce a "forwardly projecting lip upon the upper edge of which is a tongue," adapted to engage between the hooks and enable the lip to engage said hooks, thus constituting an open bearing. Manifestly the aim of the inventor was to accomplish the construction of a clamp lever from a single piece of metal appropriately stamped to form a projecting lip and tongue adjusted to engage the bearings in the follower, whereby the clamp is thrust downward upon the track plate coming in frictional contact with it without the use of pindles, pins, or rivets. That the Yawman clamping plate was stamped from sheet metal in the manner described probably is unimportant, as the invention is not predicated upon the manner in which the form or configuration of the clamping plate is produced. The important question for determination is whether the open bearings on the follower, which made possible the engagement with the clamp, in combination with the other elements specified in the claims, was a new principle, producing a functional result not previously attained.

The defendant contends that the patent is void, and in support of this claim

has introduced in evidence a number of exhibits. It is not thought necessary to have recourse to all the patents claimed to anticipate the patent, and only a few will be discussed. The prior patents to Hunter and Macey and the two exhibit Richter followers are thought to be the best references, and stress was placed upon them at the hearing. It appears from such publications that files for card indexes with a wooden drawer, track plate or rod at the bottom thereof, and clamping device, together with a follower block for maintaining the cards in position, were well known in the art before the date of the Yawman patent. In the patent to Hunter, No. 657,415, dated September 4, 1900, a card receptacle is shown having a follower block adapted to slide on a track plate and a spring operated by a clamp adjusted to engage with the track plate on the top or on the underside thereof. The clamp engages or grips the track plate by means of a small recess or slot at its lower end. I do not think this device discloses the principle of the patent in suit, by which the entire free end of the clamp is thrust against the track and lifted therefrom when the lever is pressed against the spring. It is true the binding action of the lever in the Hunter patent is released by pressing its upper portion against the spring inserted in a recess between the follower and the lever bar; but the functional result is due simply to unlocking the lever at the point where it is cut out to engage the track. In the Macey patent the clamp lever extends downward through an opening in a metal projection, evidently not unlike the hook in the Yawman patent, and contact is made with the rod that passes through an aperture underneath the projecting plate. In its normal position the lever is tilted by spring action and by a downward pressure locks the follower upon the rod. It is shown that the binding action is not upon a fixed plate or track, as in the Yawman patent, but is dependent upon the gripping of the upper and lower edges of the rod. In this respect the principle of operation would seem to be similar to that of the Hunter device. Moreover, the open bearing of the Macey structure is concededly not on the side toward the track, as in the patent in suit. This citation, in my opinion, does not meet the claims in controversy.

The prior Richter exhibit followers employ locking devices which do not come in frictional engagement with the track plate. The inventor thereof provided a series of holes lengthwise in the track plate for engagement with a dog in the bottom of the lever; the adjustment of the clamp with the track depending wholly upon connection of the dog with one of the holes in the track. I do not deem it necessary to discuss these exhibits in detail, as they would seem to be sufficiently differentiated by the fact that the locking member is not thrust against the track, holding the follower firmly thereto, although the track plates probably are not essentially different from the track plate of the patent in suit. Moreover, they have no open bearings toward the track to enable thrusting down the clamping lever to engage the track. The novelty of the Yawman structure consists essentially in the adjustment of the clamping plate contiguous of the follower in such manner as to furnish open bearings, so that the free end of the clamp in normal position will press against the track and hold the follower in the desired position. The claims, thus construed, render it unnecessary to refer to any of the other patent exhibits introduced in evidence by the defendant. They do not embody the principle of the Yawman patent, though it may be conceded that they contain separate parts of the invention or methods of operation similar in part.

The substance of the Yawman invention is not found in prior patents; hence the defense of anticipation cannot prevail. Upon this point the rule stated by the Supreme Court in the case of Imhaeuser v. Buerk, 101 U. S. 647, 25 L. Ed. 945, would seem to apply: "Where the thing patented is an entirety, consisting of a single device or combination of old elements incapable of division or separate use, the respondent cannot escape the charge of infringement by alleging or proving that a part of the entire invention is found in one prior patent, * * * and another part in another prior exhibit, and still another part in a third exhibit, and from three or any greater number of such exhibits draw the conclusion that the patentee is not the original and first inventor of the patented improvement." Accordingly the combination of elements described in the claims, although some or all of them were old, produced a new functional result, and therefore the invalidity of the Yawman

patent is not fairly established. The proofs show that in a modest way the patentee advanced the art. He did not simply produce an advantageous form or configuration of the clamping plate to enable easily assembling the parts. He did something more than simplifying the details of construction. The art had been variously developed, and would seem to have excluded further invention. Yet the patentee evolved a principle of construction which went a step beyond a mere improvement in degree, and accordingly, in my opinion, the patent is entitled to the protection of the patent laws.

As to infringement: The proofs show that the clamping plate and bearings employed in the device of the defendant are somewhat differently constructed from complainant's; but they are not essentially dissimilar. Each of the infringing exhibits has a hook on the follower and clamping plate thrust against the track and a cross-bar in the clamping plate (corresponding to the lip in complainant's plate) engaging the lower side of the hook, a movable follower, and spring between the follower and the clamping plate at its upper end. In addition to these elements the defendant employs a slide attached to the follower block and clamping plate, which by equivalent means engages the guide "having the lip lying in the hook." The open bearing or hook on the follower, or its equivalent, also is found in the defendant's structures. A thrust bearing is formed in defendant's earlier structure by engagement of the hook and clamping plate; the clamp being pivoted in the bearings and held therein by the contact of its free end with the track plate. In defendant's later structure, a portion of the slot which engages the hook or bent-over part of the plate on the follower is closed, and the clamping plate cannot, as in defendant's first structure and in that of complainant, be readily removed and released from the follower. But the frictional result of the claims in suit are obtained in this later structure, notwithstanding the utilization of a single open bearing in connection with the clamp and hook in the follower plate. The alteration is a detail of construction, and, performing as it does, the same function, it cannot be held to differentiate the patent in suit. The Yawman invention, though simply an improvement in prior files, is nevertheless of sufficient breath to prohibit avoiding it by colorable imitations or by equivalent means which are nonessential changes in form or structure, and which do not alter the principle of operation. Hutter v. De Q. Bottle Stopper Co., 128 Fed. 283, 62 C. C. A. 652; Columbia Wire Co. v. Kokomo Steel & Wire Co., 143 Fed. 116. 121, 74 C. C. A. 310.

My conclusion is that the defendant's structures embody the elements of the specific claims (4 and 5) and the broad claims (10, 11, and 12) in suit. A decree for an injunction and an accounting, with costs, may be entered.