## LENK v. HUNT–LASHER CO.

(District Court, D. Massachusetts. August 2, 1926.)

No. 2472.

1. Patents ⬤259.
   Contributory infringement is a recognized ground for injunctive relief.

2. Patents ⬤259.
   A manufacturer, who instructs users to introduce an element which makes the device an infringement, is chargeable with contributory infringement.

3. Patents ⬤112(4).
   Award of priority of invention by patent office must stand, unless overcome by clear and convincing evidence.

4. Patents ⬤52.
   An accidental result of the operation of a prior device, not intended nor recognized, does not constitute anticipation.

5. Patents ⬤36—After many unsuccessful efforts to supply a recognized need, a result which is rapidly accepted as successful is strong evidence of invention.
   Where a need or a difficulty in a given art has been widely recognized, and has led to many efforts to supply or overcome it, accomplishment of a result which has been rapidly and widely received as successful is pretty strong evidence of invention.

6. Patents ⬤26(2)—New combination of old elements, which produces new and beneficial result, is patentable.
   When one has selected well-known elements from the prior art, and has so combined them as to produce a new and beneficial result, he has exercised more than ordinary mechanical skill, and his work merits the protection of the patent laws.

7. Patents ⬤328—Stanczyk, 1,551,069, for automatic blow torch, held valid and infringed.
   The Stanczyk patent, No. 1,551,069, for an automatic blow torch, held to cover an invention of the patentee, not anticipated, and valid; claims 6, 14, 15, and 16 also held infringed.

In Equity. Suit by D. Allen Lenk against the Hunt-Lasher Company. Decree for complainant.

Roberts, Roberts & Cushman and Odin Roberts, all of Boston, Mass., for plaintiff.

Ellis Spear, Jr., and James J. Gaffney, both of Boston, Mass., for defendant.

BREWSTER, District Judge. This is a suit for infringement of claims 6, 14, 15, and 16 of letters patent No. 1,551,069, issued to the plaintiff, as assignee of one Stanley Stanczyk, for an improvement in automatic blow torches, in which alcohol is used as a fuel, and

which are adapted for use by jewelers, electricians, and others for soldering and brazing. The blow torch consists of a flame cylinder and a pressure-producing cylinder, both adapted to contain the fuel. At the upper end of the flame cylinder is inserted a wick plug, with feeder wick depending therefrom, designed to provide a flame area, and at the same time to obviate any leakage when the torch is tipped. The pressure or blast cylinder is shorter than the flame cylinder. Into this cylinder is introduced a jet tube, which goes nearly to the bottom of the cylinder. The upper end of the tube is curved in such a manner that it normally overhangs the plug wick in the flame cylinder. In this tube is a wick, twisted about a copper wire; the wick and wire extending to the lower end of the blast chamber. The two cylinders are joined in an adjustable manner by means of a clamp. In operation the plug wick is ignited, and the heat from the flame is applied to the jet tube, and transmitted to the alcohol in the blast chamber, causing vaporization therein, and producing a pressure of gas which, when forced through the small opening at the end of the jet tube and across the flame, gives a needle-pointed flame which the operator can use in soldering or brazing.

Claims 6 and 15 are sufficiently illustrative of the alleged patentable novelty claimed for the torch. They are as follows:

"6. In a blow torch of the class described, comprising a flame cylinder and a blast cylinder operably connected in an adjustable manner; a tube in said blast cylinder having an externally extended curved portion; a feed wick in said tube; and a heat transmitting medium in said tube."

"15. In a blow torch of the class described, a lamp comprising a fuel receptacle; a permeable plug in said receptacle composed of absorbent material adapted to present a flame area at the exposed portion thereof; and held therein under compression whereby an effective barrier to free leakage of fuel is provided; a feed wick depending from said plug adapted to feed fuel to said flame area; and means coacting with said lamp adapted to create a gaseous blast."

The plaintiff has manufactured and sold to the trade a considerable number of the patented blow torches.

The defendant is manufacturing and selling an automatic blow torch, known as "Self-blo," which in external appearance is nearly an exact copy of plaintiff's torch, and in its structure it differs only in two or three particulars, but the defendant contends that

these departures are sufficient to enable it to maintain its defense of noninfringement. This contention demands a comparison between the so-called "plug wick" in plaintiff's torch and that in defendant's. Plaintiff's wick plug is a short piece of large cylindrical wicking, with a braided jacket through which is drawn a double strand of ordinary wicking as a feeder wick. Defendant's is made by folding a long piece of strand wicking into a cylindrical wad and compressing this into the lamp cylinder, leaving one end of the strand hanging from the bunch to form the feeder wick. In my opinion the language of claim 15 of plaintiff's patent covers the plug wick made and used by the defendant. I agree with the plaintiff that this difference in mode of making and assembling, involving no difference in function or relationship, is in law no difference at all. The other point of difference lies in the manner of constructing the pressure-producing member. Defendant's jet tube does not extend below the top of the blast cylinder, and, as originally sold by the manufacturer, no heat-conducting wire is inserted in the tube. But each torch sold is accompanied by printed instructions to users to "insert two ordinary pipe cleaners in the tube" in place of the wireless wick, when that wick becomes charred. In these pipe cleaners is a metal center, which, while not as efficacious as the copper wire used by the plaintiff, nevertheless embodies the same principle, and, when used, clearly infringes claim 6 of the patent. On these facts the patentee is entitled to invoke two well-established principles of patent law. As to claims 14, 15, and 16, he may invoke the doctrine of "equivalents." Imhaeuser v. Buerk, 101 U. S. 647, 25 L. Ed. 945; Duff Mfg. Co. v. Forgie, 59 F. 772, 8 C. C. A. 261; Hardison v. Brinkman, 156 F. 962, 87 C. C. A. 8; Gill v. Wells, 89 U. S. (22 Wall.) 1, 22 L. Ed. 699; Brown & Sharpe Mfg. Co. v. Starrett Co. (D. C.) 225 F. 997.

In Manton-Gaulin Mfg. Co. v. Dairy Machinery & Construction Co., Inc. (D. C.) 238 F. 210, it was said that infringement was not avoided by joining two elements in a patented machine into one integral part, accomplishing the purpose of both, and no more, so long as the same results are accomplished. [1, 2] The plaintiff, as to claim 6, may also rely upon the doctrine of contributory infringement. Canda v. Michigan Malleable Iron Co., 124 F. 486, 61 C. C. A. 194; Jockmus v. W. W. Gale & Co., Inc. (D. C.) 295 F. 208; Goodyear Shoe Machinery Co. v. Jackson, 112 F. 146, 50 C. C. A. 159, 55 L. R. A. 692.

On the evidence, I find that the substitution of pipe cleaners for the regular wicks was actually made by the user, and the intent on the part of the defendant to assist in this infringement is clearly shown. Such contributory infringement has long been recognized as ground for injunctive relief. Wallace v. Holmes, Fed. Cas. No. 17,100, 9 Blatchf. 65; Thomson-Houston v. Kelsey, 75 F. 1005, 22 C. C. A. 1; Electro Bleaching Gas Co. v. Paradon Engineering Co., Inc. (C. C. A.) 12 F.(2d) 511.

It follows, therefore, that the plaintiff must prevail in this suit, unless the patent be declared invalid on one or more of the grounds urged against its validity in defendant's answer. The grant of the monopoly to plaintiff to manufacture and sell the device carries with the patent a presumption of its validity. Westinghouse Electric & Manufacturing Co. v. Formica Insulation Co., 266 U. S. 342, 45 S. Ct. 117, 69 L. Ed. 316.

The defendant has undertaken to overcome this presumption by offering evidence tending to show:

First, that, if the torch possesses patentable novelty, plaintiff's assignor, Stanczyk, was not the one who first made the discovery;

Second, that the device is anticipated in the prior patented art. The defendant also contends that the patent is void for want of invention.

Taking up these defenses in order, a proper consideration of the question of priority of discovery necessitates at least a brief review of the events leading up to the issuance of the patent in suit, as I gather them from the evidence offered by both plaintiff and defendant, which evidence is not wholly free from conflict.

Lasher, president of the defendant corporation, was, up to June, 1921, associated with the plaintiff in the manufacture of mouth blow torches, known to the trade as the "Supreme" torch. The business was carried on in corporate form by the Federal Manufacturing Company, which became bankrupt in June, 1921, when Lenk and Lasher severed business relations; the former to organize the Lenk Manufacturing Company, and Lasher to organize the Hunt-Lasher Company, the defendant.

In 1918, Stanczyk conceived and constructed an automatic blow torch, which he disclosed to several persons and had reduced to practice before he entered the employ of the Federal Manufacturing Company in the early summer of 1920. This first torch was a crude affair, made of iron pipe and plumb-

ing supplies, but it contained all of the elements of the patented torch, and in the same association. It had the two chambers, the plug wick with depending feeder, the curved tube in the blast chamber, the wick with wire therein, and the two chambers were operably joined by clamps. The mode of operation, the functions of parts, and the results were the same as appear in the torch later perfected and patented. When Stanczyk came to the Federal Manufacturing Company, the plug wick used in the Supreme torch was made of felt, with a feed wick running therethrough. It was not altogether satisfactory, because it did not prevent leakage or "boiling over," and the company was experimenting with plug wicks in an endeavor to overcome these objectionable features of the felt wick. During this period Stanczyk disclosed to his superintendent his automatic blow torch, and out of materials used in the manufacture of the Supreme torch he constructed several torches like the original model, except that for a plug wick he used strands of wicking tied together and compressed into the cylinder to form the plug, and through this ran the feed wick. Later the Federal Manufacturing Company adopted for use as plug wicks in the Supreme torch a braided jacketed wicking of suitable diameter, and this is the material used in the manufacture of the patented torch. The Federal Manufacturing Company never manufactured any of the automatic two-chamber blow torches.

[3] After the bankruptcy of that corporation, to wit, on September 21, 1921, Lasher filed an application for letters patent covering an automatic blow torch designed in all essential respects according to the torch disclosed to the Federal Manufacturing Company by Stanczyk. On December 1, 1921, Stanczyk filed his application. The Patent Office declared an interference on counts involving, among others, claims 6, 14, 15, and 16 of Stanczyk's application and the corresponding claims of Lasher's application. In these proceedings Stanczyk submitted his evidence. Lasher submitted no evidence, though several depositions were taken on his behalf. Priority of invention was awarded to Stanczyk, and the patent issued accordingly. In the trial before me, evidence was received in support of Lasher's claim that the invention disclosed in the application originated with him; but, if we concede that Lasher was an original inventor, on his own testimony, the date of his discovery was nearly two years after Stanczyk had conceived his automatic blow torch and reduced it to actual use. The evi-

dence before the Patent Office fully warranted the award of priority to Stanczyk, and the evidence adduced at the hearing before me does not admit of any reversal of this award. It therefore should stand. See Morgan v. Daniels, 153 U. S. 120, 14 S. Ct. 772, 38 L. Ed. 657; Webster Elec. Co. v. Podlesak (D. C.) 255 F. 907.

Proceeding now to the defense of anticipation, I note that in defendant's answer it has cited numerous patents, covering different types of lamps and torches, including blow torches. Of these only six relate to automatic blow torches of the two-chamber type and demand special consideration. These patents are:

Charron, 506,871;
Freddy, 626,603;
Rosenbrook, 712,097;
Princen, 725,769;
Bartel, 1,023,610;
Snow, 1,296,869.

In all of the patents we find the two chambers, one corresponding to the flame cylinder, and the other to the blast cylinder, of Stanczyk's torch. In each pressure is produced by applying heat to volatile liquid. Each makes use of one or more of the elements used by Stanczyk. But I do not find in any of them a combination of elements similar in principle or function to the combination worked out by Stanczyk. Nor do I find in any of them the alleged novelty described in the sixth, or in the fourteenth, fifteenth, and sixteenth, claims of Stanczyk's patent. None show a plug wick performing the two-fold function of plug to prevent leakage and wick for relatively large flame areas in the lamp cylinder. The same may be stated respecting the heat-conducting medium in the wick in the jet tube. In Charron, 506,871, vapor is forced over a flame, but in no other respect is the lamp similar to Stanczyk's torch, either in manner of construction or mode of operation, and it does not in any way anticipate claim 6, or claims 14, 15, 16. There is no wick leading to the chamber where the vapor is formed, and the vapor is produced by applying heat directly under the fuel chamber.

[4] In some of the cited patents, not mentioned above, which show only one chamber, there is a metal wire or strip, running down with the wick into the fuel supply; but in none of them is any claim made that it functions as a heat conductor. If it did so function, it was accidental, and not intentional. Such accidental result, not intended or recognized, does not constitute anticipation. Eibel Process Co. v. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; Munising Paper Co. v. American Sulphite Co., 228 F. 700, 143 C. C. A. 222; Tilghman v. Proctor, 102 U. S. 708, 26 L. Ed. 279; Hillard v. Fisher, 159 F. 439, 86 C. C. A. 469.

In at least two respects Stanczyk's invention was in advance of the patented art; the heat-conducting wire in the jet tube (claim 6), and the plug wick in the flame cylinder (claims 14, 15, 16). That this improvement upon the art was useful and meritorious is obvious from the fact, shown by the evidence, that automatic blow torches made according to the Stanczyk conception have been commercially successful. The invention cannot be regarded as a great one. Every element of the claim, considered separately and in different associations, was old; but Stanczyk "was the first to assemble them in the combinations in controversy. By so doing he made an advance, which, though it did not go far, entitled him to protection." Yawman v. Vetter, 159 F. 443, 86 C. C. A. 473. This is so, unless it be held, as defendant argues, that the improvement did not call into play inventive or intuitive genius of the inventor.

This brings me to the third ground upon which the validity of the patent in suit is attacked.

[5] I think this case falls near that line which separates mechanical skill from invention, a line which Mr. Justice Stone has recently observed was "sometimes tenuous and difficult of ascertainment." Concrete Appliances Co. v. Gomery, 269 U. S. 177, 46 S. Ct. 42, 70 L. Ed. 40.

I find in a late opinion of Judge Morton in this district a helpful statement. He said:

"Where a need or a difficulty in any given art has been widely recognized, and has led to many efforts to supply or overcome it, I have thought that a result which was rapidly received as successful was pretty strong evidence of invention." Respro, Inc., v. Sydeman (D. C.) 11 F.(2d) 779, 781.

This case presents a situation where both need and difficulties in the art were seen. A strong indication of this is the number of patents in this and analogous arts. Inventive genius seems to have been at work, seeking some kind of an automatic blow torch which would be compact, effective, readily adapted to use in any position in which it might be held, and at all times be safe and reliable. None of the prior patents met this need or overcame the difficulties. Stanczyk's torch did, as evidenced by the large number manufactured and sold both by plaintiff and defendant. See J. L. Mott Iron Works v.

Standard Sanitary Mfg. Co., 159 F. 135, 86 C. C. A. 325; Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U. S. 428, 31 S. Ct. 444, 55 L. Ed. 527; Salt's Textile Mfg. Co. v. Tingue Mfg. Co. (D. C.) 227 F. 115.

[6] While it is true that a new combination of old, well-known elements, producing no new results, involves only mechanical skill and may not be a proper subject for a patent (Clark Pomace-Holder Co. v. Ferguson, 119 U. S. 335, 7 S. Ct. 382, 30 L. Ed. 406; Knapp v. Morss, 150 U. S. 221, 14 S. Ct. 81, 37 L. Ed. 1059), there is authority which has persuasive force in support of the proposition that, when one has selected well-known elements from the prior art and has so combined them as to produce a new and beneficial result, such as a more useful and more effective device, he has exercised more than ordinary mechanical skill, and his work merits the protection of our patent laws (Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177; Expanded Metal Co. v. Bradford, 214 U. S. 366, 29 S. Ct. 652, 53 L. Ed. 1034; Eibel Process Co. v. Minn. & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523; Fairbanks v. Stickney, 123 F. 79, 59 C. C. A. 209; Boyer v. Keller, 127 F. 130, 62 C. C. A. 244; Frey v. Marvel Auto Supply Co., 236 F. 916, 150 C. C. A. 178; Independent Coal Tar Co. v. Cressy, 260 F. 463, 171 C. C. A. 289; Conway v. White [C. C. A.] 9 F.[2d] 863).

[7] In Frey v. Marvel Auto Supply Co., supra, Judge Knappen found invention to exist, "notwithstanding every element in plaintiff's device were old, * * * if by the combination of those old elements there is produced a new and useful result, or if an old result is effected in a new and materially better way." I think the patent in suit falls within that class of cases where the courts have found invention or something more than nonpatentable mechanical skill. In any event, the Patent Office has adjudged Stanczyk's conception to be worthy of a patent. Neither the defendant's evidence nor the arguments presented in its brief convinces me that the court should now disturb this administrative act.

I find, therefore, that plaintiff's patent is valid, that defendant has established none of its defenses, and, for reasons above indicated, that defendant's Selfblo torch infringes claims 14, 15, and 16 of plaintiff's patent, and that there is contributory infringement by defendant of claim 6.

It follows that the plaintiff is entitled to the relief prayed for in his bill of complaint, and decrees may be entered accordingly.