### LENK v. LASHER–PEERBLOW CO. et al.

District Court, D. Massachusetts. July 10, 1928.

No. 2728.

1. Patents ⟨⟩327(14)—One supervising defense of patent infringement suit and incorporating company succeeding to business carried on by him under same name held concluded by adjudication of validity of patent.

One manufacturing automatic blow torches under name of certain company, after institution of patent infringement suit against corporation of which he was stockholder, instrumental in incorporating such company, which succeeded to business, and supervising conduct of defense, expenses of which were paid from funds of such company, held concluded by adjudication of validity of patent in such suit.

2. Patents ⟨⟩120—Old element, known as proper substitute for element in combination when patent was granted, is within scope of secondary invention.

While the range of equivalents of other than a pioneer patent cannot be far extended, an old element, known as a proper substitute for an element in the combination when patent was granted, comes within scope of secondary invention.

3. Patents ⟨⟩328—1,551,069, for automatic blow torch, held infringed.

Stanczyk patent, No. 1,551,069, claims 14, 15, 16, for automatic blow torch, held infringed.

Suit by D. Allen Lenk against the Lasher-Peerblow Company and Lester L. Lasher. Decree against defendant Lasher.

Richard F. Walker and Roberts, Cushman & Woodberry, all of Boston, Mass., for plaintiff.

Geo. B. Rawlings, of Boston, Mass., for defendants.

BREWSTER, District Judge. This is a patent infringement suit, based on claims 14, 15, and 16 of letters patent No. 1,551,069, issued August 25, 1925, to one Stanczyk, and assigned to the plaintiff. It relates to an automatic blow torch. These claims were held valid in Lenk v. Hunt-Lasher Co., Inc. (D. C.) 14 F.(2d) 335.

[1] This suit was originally brought against the defendant Lasher and the Lasher-Peerblow Company, of which Lasher was the controlling owner and executive head. Since these proceedings started, the defendant corporation has gone into bankruptcy, and it has been dropped as a party defendant. The case proceeds, therefore, against Lasher only. During the trial, after evidence had been received bearing upon that phase of the case, I ruled that the defendant Lasher was bound by the decision in Lenk v. Hunt-Lasher Co., supra, and that therefore it was not open to him to question the validity of the claims in suit. I have no occasion to doubt the correctness of that ruling. It was proved that, after the earlier suit was instituted, the defendant Lasher, under the name of Lasher-Peerblow Company, engaged in the business of manufacturing automatic blow torches; that shortly before the hearings he was instrumental in incorporating the Lasher-Peerblow Company, which succeeded to the business which the defendant Lasher had theretofore carried on as an individual under the same name; that the defense of the earlier suit of Lenk v. Hunt-Lasher Co., supra, was openly conducted and directed under the supervision of the defendant Lasher, and the expenses paid from funds of the Lasher-Peerblow Company. These facts afford adequate grounds for the ruling that the defendant Lasher was concluded by the earlier adjudication respecting the validity of the patent. Elliott Co. v. Roto Co. (C. C. A.) 242 F. 941; Lyons v. Baer & Wilde Co. (C. C. A. 1st Cir. May 31, 1928) 26 F.(2d) 599.

The sole question is one of infringement. The plaintiff's evidence tends to show that, since the decree in Lenk v. Hunt-Lasher Co., the defendant corporation, under the management and control of the defendant

Lasher, had manufactured and sold three types of Selfblo torches. One of the types (Plaintiff's Exhibit 3) is so nearly identical with the torch held to be an infringement in Lenk v. Hunt-Lasher Co., supra, that it need not be considered. I do not understand that it is seriously contended by the defendant that this torch does not infringe. He denies having manufactured and sold this type since the decree in that case. In the other two types, the defendants incorporated a device upon which Lasher received a patent October 26, 1926 (No. 1,604,751). The real question is whether defendant's torches, embodying defendant's patented device, infringe the claims in question. For a general description of the plaintiff's patent automatic blow torch, I quote from the opinion in Lenk v. Hunt-Lasher Co., supra (at page 336):

"The blow torch consists of a flame cylinder and a pressure producing cylinder, both adapted to contain the fuel. At the upper end of the flame cylinder is inserted a wick plug, with feeder wick depending therefrom, designed to provide a flame area, and at the same time to obviate any leakage when the torch is tipped. The pressure or blast cylinder is shorter than the flame cylinder. Into this cylinder is introduced a jet tube, which goes nearly to the bottom of the cylinder. The upper end of the tube is curved in such a manner that it normally overhangs the plug wick in the flame cylinder. In this tube is a wick, twisted about a copper wire; the wick and wire extending to the lower end of the blast chamber. The two cylinders are joined in an adjustable manner by means of a clamp. In operation the plug wick is ignited, and the heat from the flame is applied to the jet tube, and transmitted to the alcohol in the blast chamber, causing vaporization therein, and producing a pressure of gas which, when forced through the small opening at the end of the jet tube and across the flame, gives a needle-pointed flame which the operator can use in soldering or brazing."

This controversy involves only the wick plug in the flame cylinder. Plaintiff's wick plug is a short piece of large cylindrical wicking with a braided jacket, through which is drawn a double strand of ordinary wicking as a feeder wick.

Defendant's patented wick plug consisted of a metal wick holder threaded to screw into the flame end of the flame cylinder. It has a neck of lesser diameter than the portion which screws into the barrel, and through this neck is drawn the wick material

of sufficient capillary properties to .conduct fuel from the barrel to the flame area. This wick is sufficiently compressed within the neck of the metal holder to prevent leakage of fuel from the torch barrel. It has already been noted that the wick plug in the plaintiff's blow torch serves the two-fold purpose of providing a plug to prevent leakage of fuel from the flame cylinder and of providing a relatively large flame area over which the jet tube moved.

[2] The patented wick holder and wick in the defendant's device perform the same functions as do the plug wick element in the plaintiff's patent, and in the same way. The functional relations are the same. They operate to prevent leakage of fuel and provide a relatively large flame area. Functionally, defendant's wick is the equivalent of plaintiff's plug wick, and, unless plaintiff·must be held to the specific construction ·disclosed in the specifications and drawings of the Stanczyk patent, defendant's wick must fall within the range of equivalents which would attach to plaintiff's patent. In Lenk v. Hunt-Lasher Co., supra, I found the Stanczyk patent to be a combination of elements, all old, but. brought together in new associations. Not being a pioneer patent, the range of equivalents cannot be far extended; but an old element, known as a proper substitute for an element in the combination when the patent is granted, comes within that limited.scope conceded to a secondary invention. Gill v. Wells, 22 Wall. 1, 22 L. Ed. 699; Imhaeuser v. Buerk, 101 U. S. 647, 656, 25 L. Ed. 945.

"If the substitution, for one of the constituents of the concrete exemplification of a patented invention, of an instrumentality known in the prior state of the art to have the same capacity in kind as the thing for which it is substituted, does not alter the functional relationships of the factors of ·invention claimed, then such a substitute is a legal equivalent for that which has been displaced by it." Roberts, Patentability and Patent Interpretation, p. 604. See, also, Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Edwards Manufacturing Co. v. National Fireworks (C. C. A.) 272 F. 23.

[3] In the case at bar the evidence bearing upon the patented art shows the known equivalency of the wicks in issue in different combinations of plug wicks and feeder wicks, both integral and nonintegral, of the same and different diameters. For examples of plug wick with nonintegral feed of smaller diameter, it will be sufficient to cite

Dohrer, 490, 764, Payser, 257, 380, and Reinhold, 439, 560.

Furthermore, Stanczyk and Lasher were involved in interference proceedings in the Patent Office when Stanczyk produced an early model of his torch, which he had used, .and in which he employed in the flame barrel a cork through which he passed a feeder wick, thus disclosing the same idea of wick and wick holder operating as a plug and feeder wick as that found in defendant's patent.

I find and rule, therefore, that defendant's patented wick and holder are the equivalent of plaintiff's plug wick and that the second and third types (Plaintiff's Exhibits 7 and 8), manufactured and sold by the defendants, infringe, and that plaintiff is entitled to injunctive relief against the defendant Lasher as prayed for.