**RESPRO, Inc., v. SYDEMAN et al.**

(District Court, D. Massachusetts. March 19, 1926.)

No. 2165.

**1. Patents ⬤⟹328.**

Respess reissue patent, No. 15,602, May 15, 1923, claim 2, for process for making unwoven, fabrics, *held* invalid for lack of novelty and invention.

**2. Patents ⬤⟹328—Respess patent, 1,524,573, claims, 3, 4, 6–9, for process for making unwoven fabrics and the product, held not infringed, and other claims in suit, 1, 2, 5, 20, 21, and 22, invalid.**

Respess patent, No. 1,524,573, January 27, 1925, claims 3, 4, and 6–9, for process for making unwoven fabrics and the product, *held* not infringed, and other claims in suit, viz. 1, 2, 5, 20, 21, and 22, invalid for want of novelty or invention.

**3. Patents ⬤⟹66.**

An alleged anticipating patent is not to be extended beyond its fair meaning and scope.

**4. Patents ⬤⟹66—Scope of alleged anticipating patent, in absence of evidence as to what was done under it, must be determined from inspection, in connection with evidence of state of art.**

In absence of evidence as to what was done under an alleged anticipating patent, its scope and meaning must be determined by inspection of it, in connection with evidence of state of art at time to which it relates.

In Equity. Patent infringement suit by Respro, Inc., against Abraham Sydeman and another. Bill dismissed.

Odin Roberts, Robert Cushman, and Roberts, Roberts & Cushman, all of Boston, Mass., for plaintiff.

Nathan Heard and Frederick A. Tennant, both of Boston, Mass., for defendants.

MORTON, District Judge. [1, 2] This is a suit for the infringement of reissue patent to Respess, No. 15,602, dated May 15, 1923, and a later patent to him (in the order of original applications), No. 1,524,573, dated January 27, 1925. The first of these covers a process of making unwoven fabrics; the second, a process of making such fabrics and the product. The principal defense is that the patents are invalid for lack of novelty. As to the reissue patent, there is a further defense that it is also invalid because improperly reissued, and as to the other patent that certain claims in suit are not infringed. The case was heard in open court.

The reissue patent was originally applied for in 1919. At that time unwoven fabrics, made by combining felt, cotton batting, or cotton wadding with flexible cements or binders of various kinds and then drying and calendering, were more than 75 years old. Clark, in his British patent of 1843, gives a very specific description of such a fabric and the way to manufacture it. He used a binder of india rubber dissolved in a solvent, which he speaks of as a well-known article. It is hardly disputed by the plaintiff that, if a thin cement be used in the Clark machine and process, complete anticipation of the plaintiff's patent is shown. The plaintiff insists, however, that in England at that time india rubber was not used in thin solutions, but only in a thick, "plastic" form, which was spread upon the surface of fabrics or driven into them by pressure, and that there is no evidence, and no reason to believe, that a thin cement was ever used by Clark. It is argued that the form of the receptacle in his patent shows that some nonfluid cement must have been used.

[3, 4] An alleged anticipating patent is not to be extended beyond its fair meaning and scope. There being no evidence as to what was done under the Clark patent, its scope and meaning are to be determined upon an inspection of it, in connection with evidence as to the state of the art in England at the time to which it relates. Dr. Webster testifies, in effect, that only coated fabrics were then made with rubber in England, that the art developed there along that line, that the cements used were thick and "plastic," and were rolled into cloth or other material by pressure. Accepting this as true, it does not throw much light upon the meaning of the Clark patent, because we do not know, except from his patent, whether Clark was working on the old line, or branching out into a new one.

The receptacle is referred to in the Clark patent as a "trough," the cement as "india rubber dissolved," etc., and it is stated that the cement "penetrates" (page 2, line 26) the fleece. It is clear that the cement must have been fluid enough to flow along the bar and feed evenly from its lower edge, which would seem to require a pretty fluid substance, and to adhere to the feed roll as it turned down against the fleece. The patent certainly contemplates complete permeation of the fibers under roller pressure, by a cement thin enough to be suitable for such a process, and requiring to be dried before being in condition for compacting pressure. It is not for rolling a fleece into a rubber base. The only escape for the plaintiff from complete anticipation by this patent is the possibility that it may refer to a cement fluid enough to meet the foregoing requirements, and at the same

time so stiff as not to permit re-expansion of the fleece (after it had passed through the cement roll) for drying the interior fibers. There is no evidence that such a cement is possible. Moreover, the plaintiff's patent does not refer to an extremely thin cement. It describes its binder as "a heavy, viscous, cementitious substance, typically a solution extended by solvents to a *minimum* [italics mine] degree consonant with *plasticity* [italics mine], so that loss of volume upon hardening may be relatively slight, if *forced* [italics mine] into a loose, fluffy web." Such a binder would be thicker than the Goodyear formula. The discussion serves, I think, to show on what a slight foundation the plaintiff's claim of invention rests. It is hardly possible that Clark and his successors were unaware that cements differing widely in consistency could be used in his process.

The basic idea of the Clark patent appears to me to be that of impregnating a fleece or fiber with some cement liquid enough to penetrate it thoroughly, then drying off the solvent, leaving the cement in a condition to lock the fibers together (this implies that the interior fibers shall be dry), and then subjecting the material to heavy roller pressure under tension enough to keep it from wrinkling, thereby consolidating the fibers and the cement into a fabric. So construed, the Clark patent must be for substantially the same process and product which are described in the plaintiff's patent in language so grandiose and verbose as to raise the suspicion that it may have been used to cloak the familiarity and simplicity of the alleged invention; or, as was said by the Circuit Court of Appeals for this Circuit in Adt v. Bay State Optical Co., 226 F. 925, 141 C. C. A. 529: "Great skill has been used in stating slight distinctions. * * * In such claims, the impression is suggested that the claim writer is seeking to make language take the place of invention." And by the Circuit Court of Appeals (6th Cir.) in Firestone Tire & Rubber Co. v. Seiberling, 257 F. 74, 168 C. C. A. 286: "This discovery by plaintiff or his counsel was in the realm of nomenclature, not of mechanics." I find less difficulty in reaching this conclusion, because neither the Clark patent nor the Goodyear book appear to have come to the attention of the Patent Office in connection with the plaintiff's applications.

The prior art, however, by no means rests upon Clark alone. Goodyear, in connection with his work on india rubber, became interested in this sort of fabrics. He refers to them with considerable particularity in his book published about 1853, and describes different kinds of them, some of which appear to have been much the same as the plaintiff's; i. e., fibers bound together by india rubber cement and compacted by pressure, with or without heat. It was evidently well known by that time that unwoven fabrics could be so made.

Staaman, in his British patent of 1909, refers to the action of the india-rubber cement in coating *each* fiber, which must imply a pretty liquid form of it. As india rubber cement has no adhesive quality until the solvent has been driven off, Staaman's fabric must have been composed of fibers, each of which was coated with india rubber cement, then dried sufficiently to drive off the solvent, and then compacted by pressure. An enlightening experiment was performed in the courtroom by the defendants, who moistened a piece of cotton wadding with cement made according to the Goodyear formula, and then passed the moistened material through an ordinary clothes wringer. The interior fibers of the wadding preserved to a considerable degree their fluffiness, and on hasty inspection hardly seemed damp, although they were in fact thoroughly moistened by the cement. The cotton did not mat together, as it does when wet in water. The statements to this effect in the Respess patent are correct; but there is certainly nothing new in the action of his cement.

Duryea, in her American patent of 1909, says that such fabrics are well known and have great strength longitudinally, but are weak transversely, which is true of fabrics made according to the plaintiff's patents.

Respess, who testifies that he had for several years been experimenting to make unwoven fabrics suitable for artificial leather, woven ones being in common use for that purpose, went in August, 1917, to the plant of the British American Company, at Springdale, Conn., by arrangement with the management, in order to demonstrate that he could manufacture a successful article of that sort. According to the testimony of witnesses who worked with him there, he appeared to have had very little knowledge of rubber compounds, or of coating and impregnating machinery. He did have in mind the possibility of making a fabric by impregnating under pressure cotton batting or wadding with a rubber cement, drying it, and rolling it into a fabric under heavy pressure. He made no claim at that time that he had any secret formula or process. Nothing commercial was produced. Respess testifies that he was on the pay roll of this company, at $60

a week, for about a year after his experiments ceased, while he was doing nothing at all for it, and only visited the plant infrequently, generally on pay days. He next went to the Plymouth Rubber Company, at Canton, in 1919, for the same purpose, under an arrangement between that company and the Synthetic Leather Company, of which he was president. He there carried out, with the assistance of the manager and foremen, further experiments of the same general character as those at Springdale. India rubber cement in all forms was a familiar article to the men with whom he worked, and it was tried in various consistencies. An insulating tape was produced, which was sold commercially to a limited extent. A fabric very similar to the plaintiff's present product, "Tufsta," was also manufactured. There was difficulty in finding a market for it. It proved useless for making artificial leather, because the oil in the leather coating softened and destroyed the rubber in the fabric. It could not be used for bookbinding, because, it is testified, it would not take lettering. Goodyear in his book mentions this same defect in the fabrics which he produced.

Finally a suggestion came to Mr. Clifford, manager of the Plymouth Company, from an outside party, that the fabric might have a use in the manufacture of shoes. This lead proved valuable. The plaintiff's product and a similar fabric made by the defendant are, on the testimony, a distinct advance in the making of shoes and have gone into extensive use. The Plymouth Rubber Company was at this time financially weak; its management changed, and the experiments ended; and the commercial development of the material was carried forward by the plaintiff's predecessors.

An important question is whether this wide and valuable use of the material manufactured by the plaintiff, and now made also by the defendant, is due to the fact that it is a new article having qualities not previously obtained, or to the discovery that an old and neglected material might advantageously be used in shoemaking. The plaintiff, not unnaturally, argues that the first alternative is correct; that Respess has made a very meritorious invention, demonstrated by the fact that his fabric, with little advertising to push it, has been rapidly adopted by a leading industry; that, whatever may be shown in prior patents, none of the materials made under them had ever amounted to much, as far as the evidence shows; and that Respess took the step which turned the old failures into success.

How far rapid commercial success is evidence of invention is an old and much-discussed question among patent lawyers, one side regarding it as very persuasive, while the other side feels that commercial success involves so many elements besides invention that its achievement is hardly more evidence that invention was present than failure is that invention was lacking. Where a need or a difficulty in any given art has been widely recognized, and has led to many efforts to supply or overcome it, I have thought that a result which was rapidly received as successful was pretty strong evidence of invention. This case does not present that situation. Apparently nobody had thought, before the suggestion which reached Mr. Clifford, that unwoven fabrics might be used in shoe manufacture. There is no history of any recognition of such a possibility, or efforts to produce a suitable fabric to meet the need. The evidence does not show that there was any experimenting to get a fabric particularly adapted for such purposes. Apparently the fabric already being manufactured when the suggestion was made was found useful, and it was a mere question of making it of such thickness and strength as the shoe industry required. Upon such facts, I do not think that the commercial success of the plaintiff's product is much evidence of invention.

Turning to the plaintiff's patents: Only one claim of the reissue patent is alleged to have been infringed, the second, which reads as follows:

(2) "The herein described process of making an unwoven fabric consisting in forming a matted fiber sheet, saturating the sheet with a binding agent by passing it through pressure rolls to force the binding agent into and throughout the fibers, drying the product, subjecting the dried sheet to tension and pressing under tension between rollers."

This seems to me to involve nothing new whatever. It is the same process which Clark had described 75 years before, as I understand his patent. If Clark's cement was thick, as the plaintiff contends, while the Respess patent contemplates a thin cement, and if, as an original matter, it be regarded as invention to substitute thin cement for thick under Clark's disclosure, the intervening art as illustrated by Goodyear, Staaman, and others, had clearly shown the possibility of using thin cement before Respess entered the field. The element of this claim relating to "tension," if not explicitly disclosed in Clark, did not import invention. There is

nothing patentable in stretching a sheet of fabric—e. g., a towel, as it goes through the mangle—in order to prevent wrinkles from being rolled into it.

This claim is invalid for lack of novelty and invention.

Respess' second patent was applied for May 17, 1921. The two applications were in the Office together.

The gist of the process covered by this patent is stated in the plaintiff's brief as follows:

"1. Squeezing (by roll pressure) a sheet of cotton wadding together with a viscous rubber cement (rubber, 20 per cent.; gasoline, 80 per cent.), thus coating each fiber individually and liberally with the cement. (Patent, page 1, line 78, to page 2, line 75.)

"2. Releasing the squeeze pressure to let the elasticity of the fibers open up the sheet (so as to admit hot air all through it, to dry out the solvent). (Patent, page 2, lines 97 to 110; page 3, lines 61 to 78.)

"3. Making the rubber coats on all the fibers thick and sticky, by drying off the gasoline. (Patent, page 3, lines 114 to 128.)

"4. Squeezing the sheet again hard enough to solidify it. (Patent, page 3, lines 114–128.)

"An initial step in the process consists in shifting the fibers of the batting in relation to each other, as the viscous cement is forced in. This assists in the thorough coating of each fiber as the viscous solidifiable cement is pressed in. (See claims 1, 3.) This is done by applying firm traction to the under side of the batting, so that a mass or bank at the nip of the rolls, applied on the other side, pushes back the top fibers as the cement is pressed in. (Patent, page 2, lines 44 to 62, 75 to 97; page 3, lines 11 to 39, 47 to 61.)

"The specific and preferred materials are (1) a cotton batting about a quarter of an inch thick (patent, page 1, lines 104 to 106); and (2) a viscous cement solution, 20 per cent. rubber gum or compound, 80 per cent. gasoline (patent, page 4, lines 18–23).

"The sheet product, made by the process above outlined, using the specific materials designated, is pervious to air, but waterproof. (See claim 22, also Record, Weber, p. 79.)"

It is apparent from what has been said that, as I understand the Clark patent, each of these numbered steps is there disclosed. As to the drawing action on the fibers, any cement fed on the upper surface of cotton wadding which is being passed through rolls would tend to bank at the pinch of the rolls and to push back, dragging with it more or less of the upper layers of the cotton. This was distinctly observable in the wadding passed through the wringer in the experiment by the defendant in the courtroom above described. Certain of the claims of this patent refer to a step not used by the defendant, viz. "the reaction of a penetrating fluid increasing the viscosity and adhesiveness of said substance" (claim 6), and "subjecting the expanded sheet to treatment adapted to increase the viscosity of the coating throughout the fabric by interpenetration of the interstices of the expanded fabric by a reagent fluid" (claim 7). The same element also occurs in claims 8 and 9. The plaintiff argues that this means drying in air. This contention seems to me, in the light of the specifications and the language quoted, quite untenable. These claims (viz. 6 to 9, inclusive) have not been infringed by the defendant. Claims 3 and 4 have as an element the supporting belt on which the cotton is carried to the rolls. It is not used by the defendant, and these claims are not infringed. The other claims in suit are infringed, but for reasons which I think are sufficiently evident from the foregoing discussion, none of them shows, in my opinion, either novelty or patentable invention. If the claims which have been held not infringed be construed as the plaintiff contends, they would be open to the same objections.

The bill must be dismissed, and it is unnecessary to consider the other defenses which were argued.

Let there be a decree dismissing the bill, with costs.