**RESPRO, INC., v. STAR BACKING CO., Inc., et al.**

**No. 391.**

Circuit Court of Appeals, Second Circuit.

Sept. 11, 1936.

Briesen & Schrenk, of New York City (Hans v. Briesen and Fred A. Klein, both of New York City, and William C. Waring,

Jr., of Providence, R. I., of counsel), for appellant.

Bartlett, Eyre, Scott & Keel, of New York City (Richard Eyre and George N. Robillard, both of New York City, of counsel), for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The patent in suit relates to a process for making artificial leather. The process consists of five steps thus described in the specification p. 1, l. 32: "The leather substitute is made by taking suitable woven fabric and passing it through a napping machine to pull a part of the twisted fibres in the threads or cords composing the fabric, to form a fibrous surface on each side of the woven fabric, winding the prepared fabric in a machine upon a core to form a tightly wound roll. The rolls of fabric are placed in a machine similar to a doubling or facing machine, having two pressure rolls which travel at the same speed. The fabric is then saturated with an adhesive agent as it is unwound under tension. The saturated adhesive is then pressed into the fabric between pressure rollers after which it passes to a drying chamber and the solvent in the adhesive agent is evaporated. The fabric is next subjected to tension and again passed between rollers and pressed, when for some purposes the fabric is ready for use. This process may be repeated to introduce an additional quantity of adhesive agent if desired."

The specification also states that the patentee prefers to use a rubber compound containing a vulcanizing agent as the saturating adhesive, but that any other suitable adhesive agent may be used.

The patent contains only two claims, the first of which is as follows: "1. The herein described process of making a leather substitute consisting in treating a woven fabric in a napping machine to produce a loose fibre surface on the fabric, saturating the fabric with a binding agent, subjecting to pressure, drying the sheet and pressing under tension."

The remaining claim contains exactly the same elements as claim 1, except that it adds to them the further element of: "coating the product with a surface dressing."

No patent was allowed for the product so that the issue is whether there is inven-

tion in the process described and whether the process which defendant practices fairly comes within the claims. We think that the prior art is too full of mechanisms whereby a similar method of treating textiles to that used by the patentee was employed by others to justify finding invention.

As to the British patent No. 9624 to Clark of 1843, Hanley, complainant's expert, testified: "The Clark rollers are power-driven. In fact, all the power parts of the machine are hooked up to be driven in unison. After the pressure impregnation is taught, the next step is drying by heat. After heating, the treated sheet is pressed between power-driven pressure rollers K. Then the sheet is drawn from those rollers onto a take-up roll. And with this definition of tension that is involved in any drawing of a sheet, the tension is there."

It is hard to see how any of the steps are lacking in the old Clark patent except that there is no provision for napping a woven fabric. But in the British patent to Mann No. 877 A. D. 1896, it is said that: "It is preferable to raise or card the surface of the textile material in such a manner that the small hairs or fibres may become buried in the waterproofing matter." The patent provides for impregnating the fabric by means described in the specification of Annison's patent No. 19,710 A. D. 1891, which describes a mechanism for adjusting the pressure to be applied by rollers in order to impregnate the fabric. Annison shows a set of rollers for this purpose. These would become wet from the passage of the saturated cloth and thus cause the napped fibres to resume their original position on leaving the rollers. After being dried and rewound under tension, the fabric would have "a matted or felted surface."

The process described in United States patent No. 1,281,728, of 1916, to Weinheim, likewise leaves no room for such an invention as is set forth in the patent in suit. The diagram shows a woven fabric which is passed through two sets of bushing or carding rollers. It is then impregnated by means of doctor blades and a vacuum system and is subjected to further impregnation by passing through a bath and thereafter through rollers that remove the excess of impregnating material which it picks up in the bath. There is then a second passage through the doctor knife so as to impregnate the under side of the cloth. The specification describes an alternative method of impressing the impregnating fluid by the use of "two suitably mounted rollers * * * arranged to be pinched against the * * * pivoted intermediate roller * * * so that a bite of fabric * * * on opposite sides of the guide-strip * * * may be progressively passed in and out and directly under the open mouth of a dope-containing trough * * *." The use of suction to draw the dope into the fabric is only another means of impregnation than that of the alternative method described of pressure rollers. The Weinheim patent provides for either means.

The United States patent No. 1,184,870 to Rader, granted in 1916, also shows a process of impregnation by rollers. The earlier United States patent No. 340,314, to Hofmeier, described a process for the impregnation of a woven fabric by the pressure of rollers whereby the compound used is "forced down into the pores of the fabric so as to become an integral part of it." The fabric was then dried and subsequently pressed between heated rollers. It was said that the woven material might be roughened at the surface by carding or other process to cause a very intimate adherence of the albumen process to the fibers.

The British patent No. 12,174, to Lake, A. D. 1908, contains the following description of a process similar to the one before us: "The fabric such as buckram to be used as the skeleton, so to speak, is drawn through a thick solution of celluloid whereupon the fabric thus impregnated with celluloid is carried through rollers arranged close together, whereby the celluloid, which is still in a soft condition is driven through the fabric."

In Respro, Inc., v. Syteman (D.C.) 11 F.(2d) 779, the complainant's reissue patent No. 15,602 was held void for lack of invention by Judge Morton. The process involved in that particular litigation covered an unwoven material such as cotton batting but the patent included making a leather substitute out of woven fabrics as well. Judge Campbell sustained the present patent and held it infringed in Respro, Inc., v. Vulcan Proofing Co. (D.C.) 1 F. Supp. 45, on a different record from the present one, in which his attention was not called to Judge Morton's decision. The patent before Judge Morton did not involve a napping process, but otherwise was

substantially similar. We cannot regard the application of a well-known process to canton flannel, which is the only change shown over the reissue patent No. 15,602, or over Clark's British patent No. 9624 of 1843, as more than an adaptation of the process to a new material. Furthermore, the British patent No. 877, A. D. 1896, to Mann, which incorporated the Annison British patent No. 19,710 of 1891, is close to a complete anticipation.

The patent in suit remained dormant for eight years after its issue without commercial use or importance. Scarcity and high cost of leather then brought leather substitutes made in accordance with its teachings into use. Consequently there was no constant or immediate public demand for such a process as the patent discloses that would indicate that it was a significant effort of imagination or of rare skill. Before it issued, the patents to Mann, to Weinheim, and to Hofmeier employed woven fabrics, a carding process, and impregnation by the compound. As soon as any one decided to employ woven carded fabrics for commercial purposes, the processes whereby they might be transmuted into leather substitutes were ready at hand. We therefore hold the patent void for lack of invention.

The decision of Judge Inch that there was no infringement is not free from doubt, but even assuming that the patent was properly held valid, nevertheless with such an array of close prior art, the scope of any process patent would be regarded exceedingly narrow and the range of equivalents very limited. Under the circumstances we cannot regard the defendant's process as producing saturation by pressure of a positive kind, i. e., by rollers such as the patent in suit calls for. The defendant, instead of employing rollers, passes the sheet through the narrow gap between the knife blade D and the roller G. This is said by the complainant to involve sufficient pressure and to have the same effect as if the sheet were passed between two rollers. The accuracy of the complainant's measurements as to the diameter of the fabric and that of the orifice is questioned. In what, on any theory, would seem to us a narrow patent, there must be a closer adherence than this to the specification to amount to an infringement.

Nor do we think that there is "pressing under tension" when rollers are not used for pressing, but the defendant only winds the impregnated sheet after it is dried on the final drum. It seems pretty clear that there would have been no need of describing the use of steel rollers to provide the pressure if only the pressure incidental to drawing the fabric through the machine and winding it up was within the scope of the process.

In view of the foregoing, we hold that the patent is invalid and likewise not infringed. Accordingly, the decree is affirmed, with costs to the defendant, and the cause remanded, with directions to dismiss the bill.